## City of Louisville v. Leezer.

(Decided April 20, 1911.)

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Municipal Corporations—Liability for Inadequate sewers —A municipal corporation is liable in damages to a property owner who has been injured by the overflow of water caused by municipal improvement to accumulate in sewers inadequate to carry it off.

2. Sewers—Maintenance of.—Whenever a city establishes a system of sewers it must maintain them in adequate condition to meet the increasing demands of municipal population and improvement. The fact that they were adequate when constructed will not relieve the city from liability if afterwards they become inadequate on account of increasing population.

3. Limitation of Actions.—Although a sewer is a permanent improvement and adequate when first established for the purpose intended, if it becomes inadequate by reason of increasing demands upon its capacity, limitation begins to run not when the sewer is constructed but when changed conditions demonstrate its incapacity.

4. Successive Actions.—When a sewer becomes inadequate by increasing demands upon its capacity, caused by municipal increase and improvement, the injured property owner is not confined in the recovery of damages to one suit, but may bring an action for each recurring injury to his property.

LEON P. LEWIS, CLAYTON B. BLAKEY and HUSTON QUIN for appellant.

DAVIS & DAVIS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is an appeal from a judgment against the city for $250.00 for damages caused by the overflow of insufficient sewers. The facts are these: In September, 1904,

the appellee leased a building for grocery and residence purposes at the southeast corner of Sixteenth and Oak streets in the city of Louisville for one year with the privilege of five more. At the expiration of his first year he exercised his option of renewal for five years, and thereafter in May, 1908, the sewer at the corner of Sixteenth and Oak streets, and the sewers with which it was connected became overcrowded with water and the water was thrown back out of the manholes and catch-basins, filling the streets at that corner, and overflowing the appellee's leased property, injuring not only his personal property contained in the leased building but the use and occupation of the building. Thereupon he brought this suit, charging that the city in building the sewer on Sixteenth street and in connecting the same with the O'Hara street sewer and the sewer with which it was connected, negligently failed to build said sewer and the sewers with which it was connected of sufficient capacity to carry off the volume of water thus gathered and accumulated. That the city knew of the incapacity of the sewer and the sewers with which it was connected to carry off the water collected and poured into it, or by the exercise of ordinary care could have knowledge of such incapacity, and negligently permitted the sewer with which the Sixteenth street and O'Hara street sewers were connected to be burdened with an additional flow of water from two distilleries located more than a mile outside of the limits of the city, and by reason of the want of capacity of the sewer, the waters gathered and poured into it from the streets and distilleries, was and is forced back into the Sixteenth street sewer, and thrown out through the manholes.

One contention of the city is that as the sewer in question was adequate when constructed, the city is not liable in damages for overflows due to any inadequacy occasioned by the growth of the city and the increased demands thereby made upon the sewer.

In support of this proposition counsel for appellant has cited a number of authorities from other States, but the rule in this State is not the same as in other jurisdictions. We have held in a number of cases, beginning with City of Henderson v. McClain, 102 Ky. 402, that a municipal corporation is liable to a property owner who has been damaged directly or indirectly by the action of the municipal authorities in the improvement or repair of its streets or other municipal improvements. In City of

Louisville v. Norris, 111 Ky. 903, the Court said:

"When a municipality determines to change the nattural order of things by altering the surface drainage and collecting it in artificial channels, it cannot fail to use ordinary good judgment in adopting the plan of work without liability to any injured thereby. If the plan adopted is palpably bad, it will not excuse the city from resulting damage to private property to show that the execution of the plan was skillful."

In Campbell v. City of Vanceburg, 30 Ky. L. R. 1340, it is said:

"When territory within a city is permitted to remain by the authorities in the condition it was when annexed —in other words, if the city does not undertake to make improvements or changes or alterations in existing improvements, or to build streets, sidewalks, drains or gutters or reconstruct old ones, it will not be liable for any damage caused by the overflowing of the premises, because if it has not interfered in any way with the natural condition of affairs, the overflow cannot be attributed to its acts. * * * But when a city undertakes to make improvements or to alter or reconstruct old ones, it then assumes the duty of completing and keeping them in such condition that the property of the citizen will not be injured thereby." To the same effect is City of Louisville v. Knighton, 30 Ky. L. R., 1037; Harney v. City of Lexington, 130 Ky. 251.

Under these authorities and others that might be cited, we think it may be regarded as fully established in this jurisdiction that when a municipal corporation undertakes to establish a system of sewers it must make provision for the increase that may naturally and reasonably be expected in the population of the city. The fact that the sewers when first constructed were adequate to meet the demands of conditions then existing will not relieve the city from responsibility if by growth and population they become inadequate for the use they were intended to supply. If the city in the first instance has undertaken to divert into certain channels surface water, it must then supply adequate means for controlling it to keep pace with the increased demands upon the resources of the artificial channels it has established. It cannot rest free from liability upon the theory that as the scheme of improvement devised was ample to meet the demands of the conditions existing when it was established, it is under no obligation to make such changes and

additions as the altered condition of things make neces-
sary. The village gutter or sewer will not answer the
demands of a city; nor will the municipal authorities be
heard to say that because a gutter or sewer was adequate
for the village, it must answer the purposes of the city.
If a city constructs a sewer, it must make one reasonably
sufficient to answer the purposes for which it was in-
tended. The duty of a city is not ended when it has con-
structed a system of sewer or street improvements that
are unobjectionable. It must maintain them in a suitable
condition. The question is not whether the improvement
was sufficient when it was built, but is—was it adequate
when the injury complained of occurred. It results from
these views that the principal defense relied on by the
city is not tenable.

Another assignment of error is that the court sus-
tained a demurrer to the paragraphs of the answer that
pleaded in substance that the city in its corporate capac-
ity did not have sufficient funds and under constitutional
and statutory limitations, could not raise sufficient funds
to improve its sewerage system. In brief of counsel it
is said that these paragraphs presented the issue that
the city did not have and could not raise sufficient funds
to relieve the overcrowded condition of the sewer in ques-
tion. But we do not think the answer sufficient to present
the question suggested by counsel. It does not appear
from the answer that the city had exhausted all the funds
that it might have levied and collected for the purpose of
improving sewers or that it could not with the amount
of money it was authorized to levy and collect have rem-
edied the defective conditions existing at Sixteenth and
Oak streets. In view of this condition of the pleading, we
do not think it necessary to determine what the liability
of a city would be if it had no means of raising revenue
sufficient to furnish improvements that would protect the
property owner from injury and loss or to further en-
large upon this defense.

Another defense made by the city was that the injury
to the property of appellee occurred more than five years
next before the bringing of the action, and therefore was
barred by the statute of limitations.

The argument is that as the sewer that caused the
overflow was constructed more than five years before the
institution of the action and was a permanent improve-
ment, therefore the cause of action was barred after the
expiration of five years from the erection of the improve-

ment; or, in any event, the cause of action accrued when the improvement first caused the building occupied by appellee to be overflowed, and, as the first overflows resulting from this cause occurred more than five years before the institution of the action, the plea of limitation presented a good defense. This question in one form or another has been before the court in a number of cases.

In Hay v. City of Lexington, 114 Ky. 665, it appears from the opinion that in November, 1891, the city constructed a brick street in front of the property of Hay. This improvement so altered the grade of the street as to cause water, which had theretofore been diverted into other channels, to be thrown upon the premises of Hay. In a suit brought in 1900 by Hay against the city for damages resulting from the construction of this street, the plea of the five years statute of limitations was relied on by the city, and in considering the case the Court held that the cause of action accrued when the street was first constructed, and as the statute ran from that time the action was barred. To the same effect is City of Richmond v. Gentry, 136 Ky. 319; Fidelity Trust Co. v. Shelbyville Water & Light Co., 110 S. W., 239. But this line of cases has no direct bearing on the case before us. The rule laid down in them only applies when the improvement is permanent and the resulting injury grows out of this fact, or, as said in the Hay case, supra,—

"Where the injury done by a public improvement, permanent in its nature, is such that the damages occasioned thereby are permanent, the recovery must be had for the entire damage in one action, and such damages accrue from the time the nuisance is first created and from that time the statute of limitations begins to run. * * * If the work is of a permanent character and perfectly done, nothing in the way of its betterment that could remedy the evil complained of is possible or practicable. All that could be done in that way has already been done. If then the injury is caused, and must from the nature of the situation continue, it is obvious that the only remedy is to measure the damages that will compensate for the injury and give them to the party aggrieved. It is also equally clear that it must be then apparent when such work is completed just what this damage is likely to be. It is in such case the diminished value of the property in money caused by the act in question."

The damage complained of by appellee, while occasioned by what may be called a permanent improvement,

was yet due to the fact that the city by permitting the sewer to become overburdened had rendered it inadequate to perform the functions it was established to deal with. The overflow of water was not due to the permanency or imperfect construction of the sewer but to its inadequacy. The fault existing when the overflow that caused the damage to appellee's property occurred arose out of conditions that could have been removed or prevented by increasing the capacity of the sewer or by diverting into other channels the excess of water that was caused by the city to flow into it. If we should apply to the facts of this case the principle that no damage could be recovered after five years from the construction of the sewer, then however inadequate it might become on account of the growth of the city and the additional demands put upon its capacity by municipal improvement, the property holder would be left without remedy if he was so unfortunate as to become the owner of the property after five years from the establishment of the improvement and before the changed conditions had produced any injury; and this, notwithstanding the fact that for more than five years after its construction it was fully adequate to carry off the water. While we adhere to the doctrine announced in the Hay, Gentry and other like cases, manifestly it should not be extended to embrace conditions like those here presented. On the contrary we hold that when a sewer becomes increasingly inadequate by reason of the increasing demands upon its capacity, due to the growth of the city, each recurrence of injury attributable to this changed condition consti tutes a separate cause of action. The rule applied to permanent improvements where the resulting injury begins with the completion of the improvement is ample to meet the requirements of justice in such a case. but it would be entirely insufficient to protect the rights of property holders in cases where no injury was occasioned by the improvement until many years after its construction. In such a case the property holder could not possibly be compensated in one action for future damages because no one could tell what the future damage dependent upon changed conditions would be. The city, if it desires to relieve itself from recurring damage suits must take adequate steps to prevent the recurrence of injury. This it may do by increasing the capacity of the sewer to meet the increasing demands of population, or by lessening the demands upon its capacity by furnish-

ing other avenues for the escape of the water caused by the municipal improvement to accumulate. Having this view of the matter, it follows that the plea of limitation did not present any defense.

The instructions upon the subject of excessive rainfalls and the measure of damage are also criticised, but they are not open to objection.

The judgment of the lower court is affirmed.