## Horn, et al. v. Adams, et al.

(Decided May 27, 1919.)

Appeal from Daviess Circuit Court.

Drains—Drainage Districts—Validity of Organization.—A drainage district can be organized out of territory included in a drainage district already organized.

J. R. HAYS and R. M. HOLLAND for appellants.

T. F. BIRKHEAD for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

The question on this appeal is whether a drainage district may be organized within the limits of an established drainage district to meet the peculiar needs of a portion of the district.

The question arises in the following way: Prior to the proceeding the Daviess county court, on the petition of a large number of landowners, organized the Panther Creek Drainage District for the purpose of straightening, widening and deepening Panther creek, which is a large stream with two forks, known as North Panther and South Panther, with the view of furnishing a common outlet for the drainage of about 50,000 acres of land. Panther creek and its two forks have about 30 lateral branches, which are natural water courses. All of the lands lying on these laterals were assessed for the construction of Panther creek and its two forks, but no provision was made for straightening, widening, deepening or improving any of the laterals. Burnett's Fork is a lateral of Panther creek, and extends north through a wet and fertile valley for a distance of about seven miles. While the lands of Burnett's Fork have been assessed in the Panther Creek Drainage District, yet without the improvement of Burnett's Fork, they will derive little, if any, direct benefit from the im-

provement of Panther creek. This proceeding was instituted by J. B. Horn and others for the purpose of organizing a drainage district and establishing and constructing a public ditch in and along Burnett's Fork. J. H. Allen and others, who own land in the proposed drainage district, filed exceptions in the county court based on the ground that a new drainage district could not be organized in a district already established. The county court refused to permit the exceptions to be filed, and an order was entered establishing the drainage district. On appeal to the circuit court, the exceptions were filed and sustained, and the petition for the ditch dismissed. The petitioners appeal.

It is provided by the drainage act that its provisions shall be liberally construed so as to carry into effect the true intent and meaning thereof, and to promote the leveling, ditching, draining and reclamation of wet, swampy or overflowed lands. Kentucky Statutes, sec. 2380, subsection 49. The Panther Creek Drainage District was organized for the purpose of constructing a main canal to take the place of Panther creek, and drain a very large area of land. While the various tributaries of Panther creek might have been included in the drainage plan, no such steps were taken. The construction of the main canal or ditch in Panther creek was of no substantial benefit to the land on Burnett's Fork, unless they could be connected by proper drains, and as no such connection was authorized or provided by the proceeding to establish the Panther creek district, it follows that unless the Burnett's Fork district may be established within the territory embraced in the Panther creek district, the landowners on Burnett's Fork, unless able to construct their own ditches, are in a decidedly unfortunate predicament. In view of this situation, and of the liberal construction directed to be given to the statute, we conclude that the right to establish a drainage district in an existing district should be upheld, unless forbidden by the statute. One reason assigned for a denial of the right is that the statute provides that the bonds shall be a first and paramount lien upon the lands assessed, and that this could not be the case if other bonds for the main improvement in the district already established had been issued. Whether the bonds issued by the subdistrict would be prior to those issued by the district itself is a question which we

shall not undertake to decide in the absence of the parties in interest. Manifestly, the same question would arise if it had been sought to improve not only Panther creek, but Burnett's Fork, in the same proceeding, and as it is admitted that the latter plan might have been pursued, it is clear that the question of priority does not control the method of procedure.

Another contention is that subsection 30, section 2380, Kentucky Statutes, plainly contemplates that the owners themselves shall construct lateral drains from their own lands to the main drain, thereby excluding the idea that further assessments for that purpose may be made. The section in question is as follows:

"The owner of any land that has been assessed for the co t of the construction of any ditch, drain or water course, as herein provided, shall have the right to use the ditch, drain or water course as an outlet for lateral drains from said land; and if said land is separated from the ditch, drain or water course by the land of another or others, and the owner thereof shall be unable to agree with said other or others as to the terms and conditions on which he may enter their lands and construct said train or ditch, he may file his ancillary petition in such pending proceeding to the court, and have the same condemned in the same manner as now or as may hereafter be provided for the condemnation of right of way by railroads. When the ditch is constructed, it shall become a part of the drainage system and shall be under the control of the board of drainage commissioners and be kept in repair by them as herein provided."

In our opinion, the only purpose of this provision was to give to the owners, whose property had been assessed for the construction of the main ditch, the right to connect therewith, and the further right to condemn land for that purpose, and there is nothing in the provision which expressly, or by necessary implication, forbids the further assessment of particular lands to meet their particular needs. Indeed, the drainage act of North Carolina not only contains a similar provision, but the act, as a whole, is quite similar to ours. In the recent case of Drainage Commissioners v. East Carolina Home and Farm Association, 165 N. C. 697, 81 S. E. 947, Ann. Cases, 1915C, 40, the supreme court of that state held that the drainage act in that state authorized the formation of another drainage district within

the boundaries of an existing district, for the purpose of benefits to accrue solely to land within the smaller district from its construction of laterals. In the course of its opinion the court said:

"The formation of the Washington County Drainage District No. 4 covers a part of the territory embraced in the Pungo River Drainage District, but in no wise conflicts with the purposes of the latter. The latter was for the purpose common to the entire scope of territory embraced within its limits, which was to construct the Pungo river canal. The Washington County Drainage District No. 4 was formed subsequently, and is for the purpose of benefits to accrue solely to that part of the territory of the Pungo River Drainage District which is embraced within Washington County Drainage District, for which most of the landowners of the larger district were not willing to issue bonds, since they would derive no benefit from the construction of the lateral canals that are indispensable for the drainage of the Washington County Drainage District No. 4. The assessments for the principal and interest of the drainage bonds issued by the smaller and later formed district are postponed to the payment of the assessments for the principal and interest of the bonds issued by the older and larger district, and it was so understood and agreed between the plaintiffs and defendant.

There is no conflict between the two districts, and the purposes of the smaller district are ancillary to the larger district. These drainage districts are not municipal corporations, but are quasi-public corporations. Sanderlin v. Lukens, 152 N. C. 738, 68 S. W. 225; Youngsville v. Webb, 155 N. C. 379, 71 S. E. 520; Drainage Com'rs v. Webb, 160 N. C. 594, 76 S. E. 552. But even if they were, their condition would be roughly similar to that existing between the county and the state or between a township and a county. The analogy is not perfect, but this conveys the idea. A somewhat similar arrangement is seen in the road system of France, where they have national roads maintained by the general government; departmental (or state) roads supported by the departments, and cantonal (or county) roads kept up at the expense of each canton. Each lessor territory thus maintains the roads of special interest to it, in which the larger divisions are not interested.

Other courts have taken the same view of the case. Sibbett v. Steele, 144 S. W. (Mo.) 439; In re Little River Drainage District, 139 S. W. (Mo.) 330; Lee Wilson & Co. v. Wm. R. Compton Bond & Mortgage Co., 146 S. W. (Ark.) 110. For other cases bearing on the question see Mittman v. Farmer, 162 Iowa 364, 142 N. W. 991, Ann. Cases, 1915C, 1 and note. It has been further held that a drainage district may likewise include lands forming a part of another district. Bird v. Harrison County, 154 Iowa, 692, 135 N. W. 581; State v. Fuller, 83 Neb. 784, 120 N. W. 495. In the last mentioned case, the court said:

"Relator alleges that his land is within the limits of another proposed drainage district, and that the law does not authorize or contemplate the overlapping of those districts so that real estate may be subject to separate assessments in as many distinct districts.

"The statute does not refer in specific terms to the overlapping of districts, nor does it forbid their formation. While some complications may arise in the prosecution of public improvements on land within two or more districts and in assessments to pay therefor, yet we are of the opinion that the objection made is not a serious one. Relator's land can only be assessed for, and to the extent of, benefits actually bestowed by virtue of the improvements made by any particular district. The assessments can only be laid after notice, and, if the levy is not supported by the facts the landowner has an ample remedy by appeal to the courts wherein upon inquiry the truth may be ascertained and a judgment rendered that will amply protect him in his property rights. If his land may be improved by the construction of ditches or dykes in two or more districts, he ought to pay to the limit of those benefits. To hold otherwise would permit the owner of a large tract of land included in a district which had not benefited that land to any appreciable extent to receive the advantage of an improvement made by another district, and yet escape payment therefor."

The case of People v. Lease, 248 Ill. 187, 93 N. E. 783, is not authority for a contrary view under our statute. That case arose under the Illinois Levee Act. (Hurd's Rev. St. 1909, c. 42) Under that act not only is a drainage district authorized to carry out the work originally reported and confirmed, but if additional drains or work

appear to be necessary for more complete drainage of particular tracts of land, authority is given for that purpose to the drainage commissioners, who have complete jurisdiction of all questions concerning the drainage of all the lands in the district. (Section 59 of the act.) Hence, if a drainage district were organized out of territory included in a drainage district already organized, there would necessarily be a conflict of authority between the two districts, and the conclusion that this could not be done was based on the principle that two municipalities cannot exercise jurisdiction over the same territory, for the same purpose, at the same time. Under our act, however, the authority of the drainage commissioners is limited to the construction and maintenance of the ditches provided for in the original plan, and they are not vested with the power to pass on and determine all questions of drainage within the district. Hence, if a district be organized within an established district, no conflict of authority will result.

Judgment reversed and cause remanded for proceedings consistent with this opinion.