# Taylor Coal Company v. Board of Drainage Commissioners of Ohio County.

(Decided December 19, 1919.)

## Appeal from Ohio Circuit Court.

1. Drains—Drainage Commissioners—Pleading.—An allegation that plaintiff is a corporation created by and under the laws of the state of Kentucky, with power to sue and be sued in its corporate name; that it is given general charge and control over the drainage matters in Ohio county, giving the personnel of the board, and that they were regularly appointed, accepted, qualified and acting as members of said board, is a sufficient allegation of incorporation.

2. Drains—Injury to Drainage Ditch—Action for Damages—Defenses.—In a suit to recover damages for injury to a drainage ditch caused by the presence of slack and other refuse from defendant's mine, it is no defense that the mine from which the material comes does not abut the ditch.

3. Drains—Restoration of Ditch—Expenses.—Any landowner or his servants or agents whose negligence makes repairs necessary to any improvement established under Kentucky Statutes, section 2380, subsection 41, may be required to pay the expense incident to the restoration of the ditch to its previous condition; it matters not that said person does not own land abutting the ditch.

4. Drains—Drainage Districts—Public Corporations.—Drainage districts are not municipal corporations but are public corporations having not only the powers conferred by the statute but powers incident to such corporations, including, among others, the right to maintain an action for damages to a ditch under their control.

5. Eminent Domain—Public Use—Compensation.—Private property can not be taken for public use without compensation, but if the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no taking of property for the public use, and a right to compensation, on account of such injury, does not attach under the Constitution.

6. Eminent Domain—Public Use—Compensation—Police Power. The clause prohibiting the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the tranquility of every well-ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments. The legislature may make police regulations although they may interfere with the full enjoyment of private property and though no compensation is given.

7. Nuisance—Action for Damages—Limitation of Actions.—A pile of slack is not of such a character or of such permanency as to necessitate the filing of an action for damages for injury resulting from its maintenance within five years after its erection or completion.

8. Drains—Purpose of Districts—Construction of Act.—Drainage districts are established for the purpose of making the area affected healthful, fit for habitation and to improve the fertility of the soil, and the provisions of the drainage act should be liberally construed, so as to carry into effect the true intent and meaning thereof and to promote the leveeing, ditching, draining and reclamation of wet, swampy and overflowed land.

H. P. TAYLOR and J. F. GORDON for appellant.

J. E. GLENN and ERNEST WOODWARD for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Appellant owns and operates a coal mine in the vicinity of Beaver Dam creek, a tributary of Muddy creek, which latter stream empties into Rough river. Between the mouth of the mine and Beaver Dam creek slack and other refuse taken from its mine have been piled upon appellant's premises. In times of rainfall this slack washes from these piles into a ditch leading from the mine to a ditch constructed by the Illinois Central Railroad Company, or its predecessor, along its right of way; the latter ditch empties into Muddy creek. This situation has existed for forty odd years.

Formerly in times of high water the railroad ditch overflowed and the slack and other debris found its way into the woods and settled in low places.

A few years before the institution of this action there was constructed what is known as the J. P. Taylor Public Drainage Ditch, which drains an area of several thousand acres. This ditch extends from Beaver Dam creek to Muddy creek and intercepts the railroad ditch.

Complaining that slate, slack, mineral and refuse from the mine passing down Beaver Dam creek flowed into the public ditch and filled it, and having found, after many efforts, it was impossible to keep the ditch clear of this slack and refuse and the coal company after notice having failed to remove same, appellee filed this action to recover damages for the obstructions aforesaid. The petition was filed September 4, 1915, and before the amendatory acts of 1918.

This appeal is from a judgment entered pursuant to a verdict in appellee's favor.

Appellant contends it is not its fault that slack finds its way into the public ditch, but claims it is due to the negligent construction of the ditch in cutting into and crossing the railroad ditch and thus diverting the flow of water and slack. The public ditch was not constructed through the property of the coal company, its mine being about three miles distant.

Many points are urged for a reversal. We will discuss only those we deem material or pertinent. It is urged the special demurrer should have been sustained because appellee was without legal capacity to maintain the action. Its incorporation under Ky. Stats., sec. 2380, subsec. 7, and the appointment and qualification of its members are duly alleged and if so incorporated, as we must assume on demurrer it was, the special demurrer was properly overruled. It is argued that as a condition precedent to the establishment of a board of drainage commisioners there must be in course of establishment under previous subsections of section 2380, Ky. Stats., a public drainage district, and the petition does not allege the existence of such, nor any authority for the appointment of a board of drainage commissioners. Further it is claimed the petition does not allege the commissioners possessed the necessary qualifications, or that they qualified by executing a bond or taking the oath as required by law.

The petition was sufficient. It was not necessary that appellee allege every detail and step incident to its creation. If it was incorporated in accordance with the statute this was enough.

In Martin v. Ky. Lands Invest. Co., 146 Ky. 525, 142 S. W. 1038, the following allegation was held sufficient:

"Plaintiff, Kentucky Lands Investment Co., states that it is a corporation with its principal office and place of business in Louisville, Jefferson county, Kentucky, where it was at all times hereinafter stated."

As said in Thompson on Corporations, sec. 3199:

"The authorities very generally agree, where it is made necessary to plead corporate existence for any reason, that a general allegation of the legal conclusion that the plaintiff or the defendant, as the case may be, is a corporation organized and existing under the laws of some named state or country, is sufficient."

These drainage districts are not municipal corporations but are public corporations. Horn v. Adams, 184 Ky. 424, 212 S. W. 108, and hence have all those powers incident to such corporations, and as such appellee had the right to maintain this action for damages caused by the slack in the ditch, previous efforts to remove the slack having been unavailing. See Johnson v. Louisville, 11 Bush 533; Christian County Court v. Rankin, 2 Duv. 503; Lawrence County v. Chattaroi R. Co., 81 Ky. 225; Marion County v. Rives & McChord, 133 Ky. 477, 118 S. W. 309; Williams, et al. v. Wedding, et al., 165 Ky. 361, 176 S. W. 1176.

By subsec. 7 of sec. 2380, boards of drainage commissioners are vested "with the right to acquire, hold, encumber, sell and convey such real estate and personal property as shall be necessary to the conduct of its affairs, to sue and be sued, contract and be contracted with, and shall possess such other powers and rights as usually pertain to corporations, or as may be necessary for carrying on their work under the provisions of this act.

While the proper corporate existence of appellee was denied, we think the proof on this point is amply sufficient to sustain the petition and that appellee could maintain this action.

We find no merit in the contention that the right of action for damages is limited to persons through or along whose land a public ditch has been established. A person responsible for any injury or damage to a public ditch can be held liable in damage for his acts though the ditch does not run along or through his property. Nor does the statute so limit the recovery. For example in subsec. 41 of sec. 2380 it is said:

"If any repairs to any improvement established or constructed under this act, or to any ditch, natural drain, creek or non-navigable stream placed under the charge and control of the board of drainage commissioners by the terms of this act, shall become necessary by reason of the act or negligence of any landowner through which it exists, his servants or agents, or if the same shall be made necessary by any stock of said landowner, his servants or agents, then such repairs as shall be necessary to restore it to its previous condition shall be made by such owner at his own expense."

Thus we find that *any* landowner, or his servants or agents whose negligence makes repairs necessary to any improvement established under the statute, may be required to pay the expense incident to the restoration of the ditch to its previous condition.

A comparison of the language, "shall become necessary by reason of the act or negligence of any landowner, *through which it exists,*" found in subsec. 41, with the expression in subsec. 43, "shall become necessary by reason of the act or negligence of *any* landowner *through which such improvement is constructed,*" shows rather clearly a legislative intent to make the provisions of subsec. 41 apply to all or any persons whose acts or negligence cause the injury. This conclusion is fortified by the further provision of subsec. 43, imposing a fine of from ten to one hundred dollars upon any person who injures, damages or obstructs a waterway.

Another contention is that the petition fails to state whether a county board of drainage commissioners has been appointed, and if such a board was in existence, jurisdiction of the Taylor ditch would be with the county board and not appellee.

The record does not show that a county board has been created, and even though it had, its superior, the board of drainage commissioners, would not thereby be deprived of the power and duty enjoined upon it by statute, to see that the ditches in its district were properly established and maintained.

It is complained that appellee is seeking to recover damages for injury to the ditch from its source to its mouth, although not one foot of the ditch passed through any land owned by appellant. A recovery was authorized for any injury due to slack or refuse in the ditch from appellant's mines; that such was found throughout the entire length of the ditch tends strongly to indicate the extent of the obstruction. Its depth is illustrated by one witness who testifies he dug three and one-half feet in the slack and did not reach the bottom of it.

Appellant contends that some of this slack is from a mine other than appellant's; some witnesses so testify, but there is sufficient testimony to support the verdict since several witnesses say the slack came from appellant's mine, and instruction No. 4 expressly told the jury they could not find against appellant for any slack coming from the mines of others.

It is next urged that having acquired by prescription an easement in the property and ditch of the railroad, appellee cannot, without a judgment of condemnation, deprive appellant of this easement by diverting the water and then suing for the evil results following therefrom. Appellant concedes that a right to maintain a public nuisance cannot be acquired by prescription. Appellant could not be in a better position as to this easement acquired by prescription than was the railroad company as to its right of way. In L. & N. R. R. Co. v. Board of Drainage Commissioners, 183 Ky. 282, 209 S. W. 15, where the company's recovery was limited to the expense incurred for opening its tracks at the point where the drainage improvement crossed its right of way, the court holding the company was compelled to bear other expenses, such as closing its right of way or putting in a new bridge, or strengthening or enlarging an old one.

In the drainage law (Ky. Stats., sec. 2380) the power of eminent domain is conferred upon the board of drainage commissioners, and provision made for the assessment of any damage caused by the improvement, or for any other legal damages sustained.

Private property cannot be taken without compensation for public use relating strictly to the public health, morals or safety any more than under a police regulation having no relation to such matters, but only to the general welfare.

Where private property is taken for public use, compensation must be made. (Const., sec. 242.) This question however is not raised by the pleadings in this case and nothing in this opinion is to be construed as depriving appellant of any right to compensation to which it may show itself entitled by reason of the construction of said ditch, in any suit brought by it for that purpose.

As said in Chicago, B. & Q. R. Co. v. Drainage Commissioners of Illinois, 200 U. S. 561, 593:

"Upon the general subject there is no real conflict among the adjudged cases. Whatever conflict there is arises upon the question whether there has been or will be in the particular case, within the true meaning of the Constitution, a 'taking' of private property for public use. If the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no taking of property for the

public use, and a right to compensation, on account of such injury, does not attach under the Constitution. Such is the present case. There are, unquestionably, limitations upon the exercise of the public power which cannot, under any circumstances, be ignored. But the clause prohibiting the taking of private property without compensation 'is not intended as a limitation of the exercise of those police powers which are necessary to the tranquility of every well ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments. It has always been held that the legislature may make police regulations, although they may interfere with the full enjoyment of private property and though no compensation is given.' Sedgwick's Stat. & Const. Law, 434.''

In this case the court held that the rights of the railroad company to a bridge over a natural watercourse crossing its right of way were not superior or paramount to the right of the public to use that watercourse for the purpose of drainage. The company was required to pay the expense incident to the removal of the bridge and culvert, as well as the expense of the erection of a new bridge, the only charge upon the district being the expenses attendant merely upon the removal of soil in order to deepen, enlarge and widen the channel.

We are satisfied there was no taking of appellant's property for public use, and the rights of the company, under the facts disclosed by the record, were fully embraced in and protected by the instructions to the jury.

It is said by counsel for appellant that it was the intention of the legislature to require the owner of property through which the ditch passes, to keep the ditch clean, or to pay the cost of cleaning. The duty of keeping the ditches clean is imposed upon all persons, or their agents or servants through whose acts or negligence any injury or damage is done to a public ditch, and the requirements in this respect are not limited to abutting landowners.

Complaint is made of the instructions, both those given and refused, and as to the admission and rejection of testimony, but we fail to find wherein the court has committed any error in these respects. It is claimed the ditch was improperly constructed, also that appellee negligently permitted a tree or other debris to obstruct

the ditch and this caused the ditch to become filled; but for neither of these alleged reasons do we think the proof authorizes a reversal; besides in instruction No. 3 the jury was told to find in appellant's favor to the extent that any injury was occasioned by such obstruction.

Limitation is pleaded, appellant's theory being that the slack piles are permanent in their nature and no action to recover damages growing out of their existence or maintenance could be brought after five years. The rule in this state is that if the injury or nuisance complained of is permanent, limitation begins to run from the completion of the improvement or structure, or whatever produces the injury and the action is barred after five years from that time. City of Madisonville v. Hardman, 29 R. 253, 92 S. W. 930. While it is testified that the removal of the slack would entail a large expense it is not permanent in the sense contemplated by the adjudged cases. See L. & N. R. R. Co. v. Lambert, 33 R. 199, 110 S. W. 305; City of Richmond v. Gentry 136 Ky. 319, 124 S. W. 337; Hay v. City of Lexington, 114 Ky. 665, 71 S. W. 867; City of Lousiville v. Leezer, 143 Ky. 214, 136 S. W. 223.

While some effort has been made to so brace and protect the slack piles as to prevent same from washing into the creek, it seems that further effort in this direction, such for instance as keeping the ditch at the foot of the slack pile clean and strengthening and repairing the curbing or other means employed to hold the slack intact, would perhaps relieve if not entirely eliminate the trouble complained of.

Drainage districts are established for the purpose of making the area affected healthful, fit for habitation and to improve the fertility of the soil. In subsec. 49 of sec. 2380 it is provided that the drainage act shall be liberally construed so as to carry into effect the true intent and meaning thereof, and to promote the leveeing, ditching, draining and reclamation of wet, swampy or overflowed lands.

After a thorough consideration of the entire record and the many points urged for reversal we fail to find anything prejudicial to appellant or such as to authorize a reversal. Accordingly the judgment appealed from is affirmed.