# Perry et al. v. Simpkins.

(Decided June 18, 1935.)

JOHN A. MOORE and NUNN & WALLER for appellants.

A. C. MOORE for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

J. L. Simpkins, the appellee herein, brought this suit in the Crittenden circuit court to recover of the appellants damages to his land alleged to have been caused by the operation of a fluorspar mine operated by appellants beginning in the fall of 1932, or the winter of 1933, at which time appellants leased the mine of the Franklin Fluorspar Company, which had theretofore operated it.

Appellee, plaintiff below, alleged in his petition in substance that, because of the manner and methods adopted by appellants in the operation of the mines, silt, mud, clay, and other matters and ingredients of fluorspar minerals, etc., which were harmful to the water and to his land, were deposited in the bed of the creek adjoining his land and raised or filled up the bed of the creek so as to cause the water to overflow several acres of his bottom land, thereby carrying and depositing thereon the alleged harmful substances, thereby polluting and contaminating the running stream and render-

ing it unfit for use for his live stock and other purposes, and injuring his soil and rendering it less productive and permanently injured, and damaged his land in its market value in the sum of $1,500. By further appropriate allegations he asked that appellants be enjoined from further operating the mines in a manner so as to cause further damages to the water of the creek and to his land.

Appellants filed their answer, denying the allegations of the petition with respect to the manner of the operation of the mines and the alleged damages, and further affirmatively pleaded that in the operation of the mines it prepared and kept settling basins into which ran the silt, mud, mire, clay, and other substances complained of, in which basins said refuse matter would settle and sink, and denied that any harmful matters escaped therefrom into the stream or were deposited into the bed of the creek or carried onto the lands of plaintiff by the alleged overflow of the creek. It was further averred in the answer that many years prior to the operation of the mine by appellants the Franklin Fluorspar Company and other parties had operated the mines on the property without the use of any dams or settling basins, and had allowed the refuse and other matters complained of to run and pass off the premises of the mines and lands of the fluorspar company into the creek as set out and described in the plaintiff's petition, and, if plaintiff sustained the alleged damage, same was caused by the parties who operated the mines previous to their operation.

By subsequent pleadings the issues were made, and by agreement of the parties the cause was heard and tried by the court without the intervention of a jury, and the court found and entered a judgment for $400 in damages to appellee's land and premises, and also granted an injunction enjoining appellants from the further operation of the mines and the use of the water in a way and manner so as to cause further or additional damages to appellee's land or pollute the stream, and from that judgment this appeal is brought.

Appellants insist that the judgment should be reversed because: (1) That no damage was proven; (2) if any damage was proven or shown, it is too trivial to warrant injunctive relief; and (3) the injunction is too

broad in its terms, in that it prevents appellants from using the water or stream in the operation of its mines in any manner whatsoever. We will discuss these points in the order named.

1. On the outset we may say that the evidence is conflicting, but, in view of the rule that the chancellor's finding on an issue of fact will not be disturbed by this court unless such finding be against the weight of the evidence, therefore we will first give a resume of the evidence in behalf of appellee, plaintiff below.

It is alleged in the petition, and also testified to by appellee and some of his witnesses, that during the operation of the mine by the Franklin Fluorspar Company, just previous to its operation by appellants, the Franklin Fluorspar Company had its washers, settling basins, and other facilities so equipped as to prevent the water with its silt and other alleged matters from escaping into the stream and depositing the silt and other matters in the bed of the stream or to pollute the stream or cause any damages to appellee's land. There is also considerable testimony to the effect that, previous to the operation of the mines by appellants, the stream was clear and free of any harmful substances, and in the bed of the stream there were holes several feet deep, all of which were filled with clean, pure water and used for swimming pools and for live stock and other purposes incident to the use and operation of appellee's farm; and it is further shown that, after appellants began the operation of the mine, the deep holes in the bed of the stream and other parts of the bed were filled from a few inches to several feet deep with silt and other substances which escaped from the washers in the operation of the mine. A number of witnesses testified that they saw portions of appellee's bottom land overflowed with water and that there was silt, mud, clay, and other ingredients of fluorspar deposited on the land, and that the growing crops on this portion of the overflowed land did not look so well or produce as well as it previously had, and that the substances deposited thereon were very harmful to the soil.

In addition to the evidence of the various witnesses, the court, at the suggestion of the parties to the action, went upon the premises in question and personally inspected and viewed the stream and appellee's land and

the entire situation, and thereby had the benefit of his own personal observation, in addition to the testimony of the witnesses.

The court rendered a written opinion which is filed with the record in which he refers to the evidence of the witnesses and also to his personal inspection and observation of the premises, and concluded that the injuries were permanent, and rendered the judgment as above stated.

The appellants testified that appellee made complaint to them in the spring of 1931, perhaps about March previous to the filing of the suit on May 31, and that they made a personal inspection of the stream and of appellee's land and found no traces of any harmful substances or sediment deposited in the bed of the stream, and observed no such deposits on appellee's land; and in this they were corroborated by other witnesses. There is also some evidence for appellants to the effect that fluorspar is not harmful to soil, but, to the contrary, it serves as a fertilizer and is helpful. But this testimony is contradicted by appellee and some of his witnesses, who observed the soil and the growing crops thereon both previous and subsequent to the alleged overflow.

In view of the testimony of the witnesses of the respective parties, and particularly that the court made a personal inspection and observation for himself, we are unable to say that the preponderance of the evidence is in favor of either side, and in such situation we are unauthorized to disturb the finding of the chancellor.

2. It is next insisted that the damages, if any, do not warrant injunctive relief or that such damages are permanent as found by the court. The judgment of the court recites that appellants admitted in their answer that, if any damages was sustained by appellee, same was permanent. Appellants take exceptions to the alleged admission, and insist that they made no such admission in their answer. In this they are correct. The answer denies any damages in toto. However, the reason for this statement on the part of the court is explained in brief of appellee in which it is stated that counsel for appellants stated orally to the court that, if any damage was sustained, it was permanent, and asked the court to so find. However, this explanation is ex-

traneous the record. But, be that as it may, if the evidence is sufficient to sustain the judgment of the court, it is immaterial that the court may have based his conclusion upon an erroneous theory. Anderson v. City of Ludlow, 250 Ky. 204, 62 S. W. (2d) 785.

If appellee's soil was damaged as claimed by him and his witnesses, such damages could have been and perhaps were permanent to the present extent, and a continued operation of the mines in the alleged manner would have resulted in further and additional damages which also would have been permanent. It is also insisted that, if any damage resulted to appellee, the structures or other underlying causes therefor were not permanent. The court in his opinion refers to a dam constructed by appellants consisting of a plank, and remarked that it was of a trivial nature, but this did not go to the real or underlying causes which were alleged to be the failure on part of appellants to equip and maintain settling basins and other apparatus used in connection with washing the fluorspar and separating therefrom the alleged harmful substances. We do not construe the statement made by the court to mean that the situation as a whole was trivial. Furthermore, if the deep holes and other portions of the bed of the creek were filled with sediment and other substances as described by appellee and his witnesses, it can readily be seen that it would indeed be very impracticable, if not impossible, to remove these substances from the bed of the creek; and this also applies to the damages to the soil. If the soil was injured as claimed by appellee and his witnesses, it is, in a measure, permanent to the present extent of damages. Under all the circumstances, we conclude that the record sustains the court's award in damages, and also the injunction to prevent the continued pollution of the stream, or further damages to appellee's land. Thompson on Corporations (2d Ed.) sec. 5687, vol. 5; Kinnaird v. Standard Oil Co., 89 Ky. 468, 12 S. W. 937, 7 L. R. A. 451, 25 Am. St. Rep. 545, 11 Ky. Law Rep. 692; Hunter v. Taylor Coal Co. of Ky., 16 Ky. Law Rep. 159, 190; Judd v. Blakeman, 175 Ky. 848, 195 S. W. 119.

3. It is next insisted that the injunction is too broad in its terms. Taking certain sentences or parts of the order of injunction standing alone, it may appear to be too extensive, in that it would preclude the use

of the waters or stream by appellants to any extent in the operation of their mine. One sentence or part of a sentence of the injunction reads:

> "Defendants and each of them are hereby further enjoined from hereafter in any way or manner interfering with the natural flow of the water as it comes from said spring or with the flow of the creek as it flows in its natural course from said spring on down the creek, and onto the lands of the plaintiff";

but the remainder of the sentence reads:

> "And defendants and each of them are further enjoined from diverting said water either in said spring or the creek from its natural course in such a way or manner as is unreasonable or in any way or manner as to effect or stop its natural flow on down the creek, and onto the land of plaintiff, that too, free from all pollution of whatsoever kind, coming from defendant's mines, log washers, jigs or any of same."

We do not construe the injunction as intending to enjoin appellants from making any reasonable or legitimate use of the water or stream in connection with the operation of their mine, but only enjoins them from using the water or streams in a way and manner as to pollute the running stream or otherwise cause damages to result to appellee's land. This, we think, was the intention of the trial court, and is the proper construction to be applied.

Upon a review of the record, we find no error prejudicial to the substantial rights of appellants.

The judgment is affirmed.