## Latham v. Latham.

June 10, 1947.

A. J. Bratcher, Judge.

Belcher & Donan for appellant.

Jarvis & Ross for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

In his petition seeking absolute divorce appellee made the statutory charge of cruel and inhuman treatment, without fault on his part, and alleged that he and defendant were owners of a house and lot in Greenville, each owning an undivided one-half interest; he asked that it be sold and the proceeds divided between them.

The answer of defendant asking absolute divorce, denied material allegations of the petition, and in counterclaim charged cruel and inhuman treatment. As to the real property she plead that the original deed conveyed to her, and she was the sole owner, pleading facts under which she sought to fortify her claim, among them that in the execution of a mortgage to secure a loan, the husband refused to sign until the deed to the Greenville lot was, after delivery to her "changed so as to include the husband as grantee," although he had furnished no part of the purchase price.

She added that she had built an addition to the house, and had paid off the mortgage debt with her funds, with the exception of $306.90, made by the husband on September 8, 1943; that she had paid for repairs, upkeep and taxes, and made improvements, all paid for with her funds. She prayed that she be adjudged the sole owner of the property. The chancellor upon submission granted the wife divorce, giving her all household goods and $35 per month allowance until further orders. He decreed that the house and lot was joint property, and not being subject to division ordered it sold. Appellant excepted only to that part which adjudged joint ownership and order of sale and was granted appeal. The question is whether or not the court was in error in thus holding, and is the only one discussed in appellant's brief, save a question of procedure.

Appellant points out that there was no reply to or traverse of the affirmative allegations of the counter-

claim and contends that all testimony of appellee on these points was incompetent. As we read the pleadings the issue raised was the ownership of the house and lot. The whole case was prepared, submitted and adjudged on that issue, as if there had been a traverse. We have examined the depositions and find no material objections to testimony; no exceptions filed nor motion made for judgment on the pleading. The record shows that the question was first presented here. Under the state of the record the defect in pleading was waived, and it is too late to raise the question here. Hardin's Committee v. Shelman, 245 Ky. 508, 509, 53 S. W. 2d 923; Harding's Adm'r v. Trust Co., 269 Ky. 622, 108 S. W. 2d 539.

The parties were married in 1922, and for some time got along fairly well. In later years, due to the fact as is readily gathered from the record, that both were high tempered, their lives were anything but pleasant; there had been previous separations, and appellant had theretofore sued for divorce, which he says was abandoned on account of the children.

At some time after their marriage a Mr. Randolph conveyed to Mrs. Latham a lot in Luzerne, Kentucky, which had an old house on it. Latham tore down the old house and rebuilt. The two lived there for some time until that house burned. It was insured in Mrs. Latham's name and she collected $300 for the loss. They later learned that one Smith had a house in Greenville for sale. They looked at it and agreed to buy at $1,000. At the time of purchase it appears that aside from payment of $5 earnest money, which appellee says he paid and appellant says was her money, and the $300 insurance money, they had nothing for further payment. The Federal Loan Association agreed to lend $700 on the property, upon joint application of parties. There was a delay until title was approved, and in the meantime Latham applied to his father, and they obtained from a friend a cash loan of $750, and of this $700 was paid to Smith on the lot. The money obtained from the Association was paid to the first lender.

The deed as originally executed in December 1940, conveyed title to Mrs. Latham. When it came to executing the mortgage the association required signature of

both parties. Mr. Latham's father seemed to be engineering the deal. He says the deed was delivered to either him or Latham, or both, and he noted that Mrs. Latham was grantee, a fact which Latham says he had not noted. The father suggested that the deed should have placed title in both. The matter was discussed with Mrs. Latham, and she made no objection to the change, and before the deed was delivered to her it was taken by the parties to an attorney's office, and the name of appellee was inserted as joint grantee, conveying to both with right of survivorship and to their heirs.

It is stated in appellant's brief that Mrs. Latham only consented to the change in order to complete the loan, and it was made with the knowledge of the grantee. Appellant's counsel treats the question to be determined as one of law, that is, whether any part of the title to real estate "can be transferred to another by merely writing the other party's name into the deed as a party grantee, after the deed has been executed and delivered, and prior to recording," citing 16 Am. Jur. p. 442, Lacy v. Layne, 190 Ky. 667, 228 S. W. 1; Austin v. Moore, 188 Ky. 832, 224 S. W. 467, which lay down the general rule, but of doubtful application here.

The chancellor's judgment does not indicate that he held joint ownership, because the recorded deed showed title in both parties. His decision could well have rested on the conclusion that this property was obtained by both during coverture. KRS 403.060; Civil Code, sec. 475; Pullins v. Pullins, 208 Ky. 800, 272 S. W. 51; Bell v. Bell, 299 Ky. 7, 184 S. W. 2d 124. In Deaton v. Deaton, 276 Ky. 31, 122 S. W. 2d 980, we wrote that where the evidence showed that the purchase of real estate was the result of joint enterprise of husband and wife, payments being made by both parties, as were payments on improvements, each party was entitled to an undivided one-half interest. While the evidence as to contributions to the purchase of the lot is somewhat conflicting, the chancellor resolved the question on the proof before him.

There is no contention that the husband did not engineer the original loan for the $700 balance payment, nor that Mrs. Latham's $300 insurance money went as a part payment. Appellant says that he sold war bonds

and sent a check for $580 to the wife to pay on or discharge the loan; she says it was for $380 "and something." Whatever the amount of the check, part of the proceeds was used to pay the balance due. Her pleading admits payment of $306.90.

Appellee was a plumber and welder and made an average of $175 per month. He says that after the house was bought he made repairs and improvements. Mrs. Latham insists that all these were paid for out of her money. It is undisputed that after the purchase of the house, Latham built a workshop on the back of the lot, and a road to the shop, and made other repairs. He estimated that the value of the shop and road improvement was about $1,000. Other witnesses place this value at more than that sum.

The evidence is not clear as to how other payments than those mentioned above were made. The wife worked at times; she was a nurse and sometimes made as much as $75 per week. There can be little doubt but that she contributed as much or more to the upkeep of the family than did the husband. She says so, and that she did this so as he could have a business of his own. Mrs. Latham paid the insurance on the house and the taxes, and insists that she paid for repairs and improvements (except the shop) to the extent of $350, and that she paid all balance due on the mortgage loan, except the one made by Mr. Latham; there are no checks or accounts filed to show just how these payments were made. On the other hand Mr. Latham does not clearly show that he made other payments on the balance but estimated that including the shop and road, and other improvements, he had put into the property about $1,400.

There is little evidence, aside from that of appellee, as to the present value of the property. He fixes it at $6,000, and says that when the suit was filed or thereafter, he made Mrs. Latham a "give or take offer," that is, he would give her $3,000 for her interest or take $3,000 for his, and she rejected the proposal. Testimony of witnesses introduced on behalf of either party threw no light on the question of ownership, or value, of the property, the major part going to the question of the conduct of parties on their contrary claims for absolute divorce.

As we read the testimony we cannot escape the conclusion that until the final separation, followed by the suit for divorce, the parties treated the Greenville place as joint properties. That such was the intention when it was bought is to some extent borne out by Mrs. Latham's testimony. She was asked and answered:

"Q. You all were buying this property as a home place were you not? A. Yes, sir.

"Q. And you intended for it to be used as a home for you and Henry? A. Yes, sir.

"Q. And you considered that he was paying part of the purchase price, and you considered it as your joint property? A. I thought when we bought it he would pay the balance.

"Q. You had no objection to making the deed jointly? A. I did not say anything against it."

As we read the not too satisfactory proof on either side, taking into consideration the admitted contributions by parties, backed up by the apparent intentions of the parties, we think the chancellor correctly held joint ownership. If we entertain no more than a doubt our rule would require affirmance.

Judgment affirmed.