WEST KENTUCKY COAL COMPANY, a
Corporation, Appellant,

v.

Nevelyn RUDD, Administratrix with the Will
Annexed of the Estate of C. B. Moore,
Deceased, et al., Appellee.

NORTON COAL MINING COMPANY, a
corporation, Appellant,

v.

Nevelyn RUDD, Administratrix with the Will
Annexed of the Estate of C. B. Moore,
Deceased, et al., Appellee.

WILLIAMS COAL COMPANY, Appellant,

v.

Nevelyn RUDD, Administratrix with the Will
Annexed of the Estate of C. B. Moore,
Deceased, et al., Appellee.

W. G. DUNCAN COAL COMPANY, a
Corporation, Appellant,

v.

Nevelyn RUDD, Administratrix with the Will
Annexed of the Estate of C. B. Moore,
Deceased, et al., Appellee.

ZIEGLER COAL AND COKE COMPANY, a
Corporation, Appellant,

v.

Nevelyn RUDD, Administratrix with the Will
Annexed of the Estate of C. B. Moore,
Deceased, et al., Appellee.

BELL AND ZOLLER COAL COMPANY, a
Corporation, Appellant,

v.

Nevelyn RUDD, Administratrix with the Will
Annexed of the Estate of C. B. Moore,
Deceased, et al., Appellee.

HOMESTEAD COAL COMPANY, a
Corporation, Appellant,

v.

Nevelyn RUDD, Administratrix with the Will
Annexed of the Estate of C. B. Moore,
Deceased, et al., Appellee.

TERTELING BROS., INC., Appellant,

v.

Nevelyn RUDD, Administratrix with the Will
Annexed of the Estate of C. B. Moore,
Deceased, et al., Appellee.

Court of Appeals of Kentucky.

Oct. 9, 1959.

James G. Wheeler, Paducah, James F. Gordon, Madisonville, for West Ky. Coal Co.

Wm. P. Donan, Greenville, for appellants Terteling Bros. and Norton Coal Mining Co.

James G. Wheeler, Paducah, for Williams Coal Co.

Woodward, Bartlett & McCarroll, Owensboro, for appellants Zeigler Coal and Coke Co. and Bell and Zoller Coal Co.

Sam T. Jarvis, Greenville, for appellants W. G. Duncan Coal Co. and Homestead Coal Co.

John B. Anderson, Owensboro, for appellee.

CULLEN, Commissioner.

C. B. Moore, owner of a 528-acre farm lying on Pond River, in Hopkins and Muhlenberg Counties, brought action against eight coal mining companies who operate in the Pond River drainage area, alleging that the companies were casting and discharging from their properties large quantities of coal slack, copperas waters and other deleterious substances which were carried into the waters of Pond River and were deposited on his land during overflow periods, causing damage to the productivity and fertility of his land. He sought a permanent injunction, and damages. The action was brought in 1950, before adoption of the present Rules of Civil Procedure, and subsequently an order was entered that the case be practiced to its conclusion under the former Civil Code.

The court entered judgment granting a permanent injunction, and an order transferring the damage phase of the case to the common law docket, for a jury trial. The coal companies have appealed from the judgment. Subsequent to the taking of the appeal Mr. Moore died, and the action has been revived in the name of his administratrix with the will annexed, and his devisees.

The first contention of the appellants is that the court erred in overruling their motions that the plaintiff be required to elect (1) whether he would seek damages or an injunction, and, (2) if he chose to seek damages, which one of the eight defendants he would proceed against. In support of this contention the appellants first maintain that the plaintiff could not obtain both an injunction and damages in the same action, and they cite Keck v. Hafley, Ky., 237 S.W.2d 527. The latter case was a "reverse condemnation" suit, in which a landowner sought damages from the state for injury to his land, and an injunction, where the construction of a highway had diverted the flow of water from a creek so as to inundate his land. The Court held that the suit must be governed by the law applicable to condemnation actions, and since in a condemnation action the state by paying damages would acquire the right to continue to maintain the condition complained of, the landowner was limited to recovery of damages and could not obtain an injunction. The case is not authority for the proposition that in an action against a private defendant, the plaintiff may not obtain both damages and injunctive relief. In fact, the rule is the other way. See Gay v. Perry, 205 Ky. 38, 265 S.W. 437; Perry v. Simpkins, 260 Ky. 151, 84 S.W.2d 35.

The appellants further maintain, in support of their argument that the plaintiff should have been required to make an

election, that they were not joint tort-feasors, and therefore could not be joined in one action for damages. There is some authority for the proposition asserted, as concerns actions for damages *alone*, but there is no such prohibition against joining of defendants in an action to enjoin a nuisance, and it is generally held that where a court of equity has taken jurisdiction in such an action it may determine and award damages also. Pomeroy's Equity Jurisprudence, Vol. 1, sec. 237, p. 429; 39 Am. Jur., Nuisances, sec. 167, p. 437; Eastland v. Robinson, 233 Ky. 403, 25 S.W.2d 1028, 70 A.L.R. 365.

We conclude that the court correctly overruled the motion to require the plaintiff to elect.

■ The second contention of the appellants is that the evidence did not show any damage to the plaintiff's land as a result of the appellants' operations. The plaintiff's evidence was that coal slack, mine waste and other deleterious substances were deposited on his land during times of overflow of Pond River, and that the fertility and productivity of his soil had decreased; that the water of Pond River was bitter and his cattle could not drink it, and he was compelled to discontinue use of the water in a steam boiler because of chemical action of the water on the metal in the boiler. The plaintiff did not offer any evidence of chemical tests of the soil or water. The appellants introduced evidence of two water samples taken on one occasion from Pond River near the plaintiff's farm, which tested neutral as concerns acidity. They attempt to make much of this, but we think the water tests are not controlling, because (1) the samples were limited to a single day, when acid conditions could have been most favorable, (2) tests of Drake's Creek, which flows into Pond River near the plaintiff's farm, showed an extremely high acid content, and (3) the plaintiff does not rest his claim of damage on acidity of the water alone.

The appellants endeavored to establish that the acidity of the plaintiff's soil was no worse than that of other lands in the general area, but this could well mean that all of the lands were being damaged from pollutants in the water courses.

The appellants further sought to prove that by reason of mining operations of others, over a long period of years, the waters of Pond River had always been polluted, and that the appellants' operations did not make the pollution any worse. However, we think the conclusion is warranted that the condition of the river might well *improve* if continued pollution by the appellants should cease.

By selection of portions of the pleadings and of the plaintiff's testimony, the appellants assert that the plaintiff has claimed that the value of his farm was completely destroyed as early as 1937 or 1940, and therefore any pollution as a result of the appellants' operations in recent years cannot have damaged him further. This argument is tied in with a plea of limitations. The fact is, however, that the pleadings and the plaintiff's evidence, when taken as a whole, assert a claim of continuing partial damage to the plaintiff and do not warrant the interpretation placed on them by the appellants.

We cannot say that the finding of the chancellor, that the plaintiff's land is being damaged, is clearly erroneous.

A further contention of the appellants is that the plaintiff has not proved that his damage, if any, results from their operations. They call attention to the existence of a large number of abandoned mines in the Pond River watershed, the existence of an old abandoned mine on the plaintiff's own land, and other possible sources of pollution such as sewage from the City of Madisonville. As concerns the abandoned mines, they are pointed to only as possible sources of copperas water, and as hereinbefore stated, the plaintiff does not rest his claim solely on copperas water, but also

on waste and slack deposits. As concerns sewage, there is no proof of sewage in the water, and it appears that Madisonville has a sewage treatment plant which would not discharge raw sewage. There is some claim that the appellants so conduct their operations as not to discharge deleterious substances into the streams, but on the other hand there is substantial evidence that copperas water and mine wastes are so discharged from the appellants' mines. The appellants again argue that their operations have not served to increase the long-time polluted condition of the river, but we consider it sufficient that they have continued the condition.

■■ It is contended that any damage that may have been suffered by the plaintiff is of the character of permanent damage, and is barred by limitations, or in any event is reparable at law so as to preclude injunctive relief. The mines themselves do not constitute permanent nuisances, in the sense of an expensive permanent structure, as was the case in Kentucky West Virginia Gas Company v. Matny, Ky. 279 S.W. 2d 805. It is the method of operation that constitutes the nuisance. Nor is the injury to the plaintiff in the category of permanent injury within the rule that the cause of action commences to run at the time the injury first occurs. Injury of the character here involved has many times been held to constitute a continuing trespass, for which damages or an injunction may be obtained at any time, the only limitation being that damages cannot be recovered for so much of the injury as occurred more than five years before commencement of the action. See Perry v. Simpkins, 260 Ky. 151, 84 S.W.2d 35; Taylor Coal Co. v. Board of Drainage Commissioners, 189 Ky. 793, 225 S.W. 368; North Jellico Coal Company v. Trosper, 165 Ky. 417, 177 S.W. 241; City of Louisville v. Leezer, 143 Ky. 244, 136 S.W. 223.

■ The argument is advanced that the appellants were *required* by KRS 352.330 to drain the water from their mines "as directly as practicable to the adjacent streams or water-courses." This statute obviously is designed only to require that water be kept out of the working places, for safety purposes. Under no stretch of the imagination can it be construed as a direction or a permission to pollute the waters with deleterious substances, and even if so construed it would be impliedly repealed by the pollution statutes, KRS 220.580 to 220.650.

■ As to one of the appellants alone, the W. G. Duncan Coal Company, it is contended that a *prescriptive* right has been acquired to discharge pollutants into Pond River, by reason of continued use of the stream for such purposes by that company for more than 15 years before commencement of the action. Reliance is placed upon W. G. Duncan Coal Company v. Jones, Ky., 254 S.W.2d 720, 721, 723, wherein such a right was recognized. The Jones case, however, limits such a right to use "for the same purpose, to the same extent, and under the same circumstances and conditions." The evidence in the instant case would warrant the conclusion that there had been a substantial change in the operations of the W. G. Duncan Coal Company in the Pond River area in recent years, in that a washing process had been instituted, and in that there had been a material increase in the quantity of coal produced. So we cannot say that the chancellor erred in determining that the present operations of the Duncan Company were not within the scope of a prescriptive right.

■ The final contention is that certain allegations in the answers, as to prescriptive rights, limitations, and negligence on the part of the plaintiff in failing to protect his land from drainage from an abandoned mine on his own land, were not denied by a responsive pleading, and therefore stood admitted. Assuming, but not deciding, that the pleas were of such a character as to require a denial under the former Civil Code, it is sufficient to say that the parties proceeded to try the case as if proper issue had been made by the plead-

ings, and no motion for judgment on the pleadings was made; therefore the failure to reply must be deemed to have been waived. See Buchanan v. Sledge, 272 Ky. 15, 113 S.W.2d 859; Latham v. Latham, 305 Ky. 101, 203 S.W.2d 45; Hall v. Deskins, Ky., 252 S.W.2d 417.

The judgment is affirmed.

SANDIDGE, J., not sitting.