## Brooks v. City of Maysville

(Decided January 24, 1913.)

### Appeal from Mason Circuit Court.

1. Appeal—Opinion on First Appeal Law of Case.—On a second appeal of a case the opinion of the court on the first appeal will be accepted as the law of the case.

2. Appeal—Reversal for Failure to Give Instruction—Failure to Introduce Additional Evidence on Last Trial.—As on the first appeal of this case the judgment of the circuit court was reversed because of its failure to give a peremptory instruction directing a verdict for the defendant, it was the duty of that court to give such an instruction upon the trial following the reversal, unless there was evidence in the plaintiff's behalf, in addition to what was introduced for her on the first trial, authorizing a recovery; and as she failed to introduce such additional evidence on the last trial, the giving of a peremptory instruction by the court on the last trial, was not error.

3. Municipal Corporations—Injury from Overflow from Sewer — When Municipality Not Liable.—Where a municipality has not accepted or adopted a private sewer as a part of its system of sewers, it is not liable for injury to property owners by freshets, which burst the sewer and overflowed the adjoining property.

ALLAN D. COLE, for appellant.

W. H. REES, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is the second appeal of this case. On the first appeal the present appellee, City of Maysville, was the appellant.

The opinion then handed down is reported in 145, Ky., 526, and as it fully sets out and disposes of all the questions, save one of fact, presented by the present appeal, a like elaborate statement of them will not now be attempted. It is sufficient to say that the action is one brought by the appellant to recover of the appellee city, damages for the inundation of her lot and buildings,

caused by the overflowing of a ravine or channel upon which the lot is situated, which affords an outlet for the surface water coming from a large area of the city's territory. The ravine constitutes a natural sewer which, though in some places open, is at others covered by streets which the city has constructed across it, and buildings erected by property owners, and at yet other places has been walled up by various property owners. It is not claimed, however, that the construction and maintainence of the streets has lessened the size of the sewer or in any way obstructed the flow of the water therein.

While it is not claimed by appellant that the sewer has by any formal act on the part of the city authorities been declared a public sewer of the city, it is contended that it has accepted or adopted it as such by assuming the duty of maintaining it; but we held in the former opinion that such acceptance or adoption of this channel had not been shown by the evidence appearing in the record on the first appeal. In the opinion it is said:

"In the case at bar there is in our opinion no competent evidence tending to show that the city of Maysville ever accepted or adopted this channel as a part of the city system of sewers. The channel was originally built by the individual property holders, and the extent of the city's connection with it, or control over it, has been to keep it cleaned and clear for sanitary purposes. The only records of the City Council that refer, in any way, to this sewer, are three entries upon its minute book, made in 1892, 1897 and 1900, all of which relate to the cleaning of the sewer for sanitary reasons. It is true that the city has constructed several man-holes at different points along the sewer, but these were made for the purpose of affording an entrance into the sewer for the purpose of cleaning it. The only verbal testimony relating to acts upon the part of the city that might be construed into an acceptance or an adoption of the sewer, is found in the depositions of Sapp and Breslin. Sapp says that he was working for the city in 1880; that some parts of the sewer were pretty badly filled up; some parts of it were pretty badly dilapidated and that he cleaned it out and repaired it throughout. He further says that the walls or banks caved, and the walls had slipped, and he had to straighten them up. Breslin testifies that after the rain in April, 1908, and of which the

appellee is here complaining, he put appellee's wall up and repaired the sewer from the Chunn property to the west. It will be remembered, however, that this was after the principal damage had been done, and the city, at appellee's request, was helping her all it could to replace her property in its original condition. The only testimony, therefore, beyond the mere cleaning out of the sewer for sanitary purposes, that could tend to show an acceptance or adoption of the channel by the city as a part of its system of sewers, is that of Sapp, to the effect that 28 years ago he had cleaned out the sewer and repaired it. He makes no attempt to show in what respect he repaired it, or that he did anything more than the cleaning out of debris that usually and naturally gathers in such places. In our opinion, this testimony amounts to no more that that of the other witnesses, who testified that the city has done no more than clean out the sewer from time to time for the purposes of sanitation.

"Ordinarily, no legal duty rests upon a municipality through whose boundary a river or stream passes, to keep it in a safe condition or free from obstruction not of its own causing.

"While it is true, the plaintiff, by her petition, rests her case, in part, upon the added flow of water and consequent injuries by reason of the municipal use of the channel, the evidence fails to support that claim; on the contrary, it shows that no action upon the part of the city has caused any additional flow of water into the sewer. The appellee's case, therefore, rests upon the single claim that the city of Maysville had adopted this sewer as its own, and had negligently failed to keep it in proper repair."

After reviewing numerous authorities in this and other jurisdictions the opinion closes as follows:

"In view of these explicit decisions of this court, we deem it unnecessary to go into a more minute examination of the authorities of this and other states. It is sufficient to point out the fact that appellant did not build the aqueduct or channel complained of, and had no control over it, beyond a permissive control. It was built by the property owners upon their own respective properties, and was used by them through connections made therewith to suit themselves. There is no claim that appellant owned or had any interest whatever in

the soil upon which the channel was built; and, without the consent of the property holders, the city could not have acquired any such interest, except by condemnation proceedings. And, as neither consent was given or condemnation proceedings taken, the city's legal relation with respect to this land and aqueduct, remained unchanged, and the property holders' ownership was unimpaired. Dowend v. Kansas City, 156 Mo. 60, 51 L. R. A. 170. If appellant had undertaken against the will of appellee, to alter or change the channel in some way, which appellee might have considered injurious to her property, could the appellant have shown, under the facts of this case, any such claim of right of ownership to the channel as would have deprived the appellee of her superior right of ownership? Clearly, no court would sustain appellant's right to so proceed. And, that being true, it follows that appellant cannot be held liable for failing to do that which it had no legal right to do. This case is quite different in principle from City of Louisville v. Snow's Admr., 107 Ky., 543, where the city charter effected an acceptance of the dedication of a street, without any affirmative act on the part of the city. We are of opinion that appellant's (i. e. City of Maysville) motion for a peremptory instruction should have prevailed.''

On the trial of the case in the circuit court following the reversal on the first appeal, that court, at the conclusion of the plaintiff's evidence peremptorily instructed the jury to find for the appellee, city of Maysville, and such was their verdict; and it is of this ruling of the court and judgment entered thereon, that the appellant now complains.

It is patent that there was no error in the giving of a peremptory instruction, unless there was some evidence introduced in appellant's behalf on the last trial, which conduced to prove appellee's adoption of the sewer in question as a part of its system of sewers. The mere introduction on the last trial of additional witnesses as to the same facts, relied on by appellant on the first trial, to show the city's adoption of the sewer, would not have entitled her to have the case go to the jury. In order to do so there must have been additional evidence, whether furnished by the same or additional witnesses, presenting facts, other than those introduced on the first trial, which conduced to prove the city's

adoption of the sewer. It therefore only remains to determine whether there was such additional evidence introduced on the last trial.

In determining this question it should be remarked that the opinion of this court on the first appeal must be accepted as the law of the case. With this in mind, was there any evidence on the last trial, in addition to and considered with that of the first trial reintroduced on the last trial, which conduced to prove the adoption, by the city of Maysville, of the sewer?

The witnesses introduced on the first trial, by whom such adoption was attempted to be shown, were Newell, Hasson, Sapp, Brislin, Crowell and Rains. These witnesses were also introduced on the last trial and, while the testimony of each is, in some respects, more elaborate than on the first trial, we are unable to discover that it presents any new or additional facts conducing to prove the adoption by the city of the sewer. The additional witnesses on the last trial were Easton and Lyons. The first testified in effect as to his knowledge of the city's cleaning out of the sewer in 1880; the second, that he was the assistant of Sapp in cleaning out and repairing the sewer in that year or about that time. In our opinion, such of the testimony furnished by these witnesses, as was not given on the first trial, is only cumulative, and it falls short of meeting the objections to such evidence contained in our former opinion. As therein said, it does nothing more than show that whatever was done by the city of Maysville in cleaning or repairing the sewer, was merely for the purposes of sanitation, which did not constitute an adoption by the city of the water course as a part of its system of sewers.

There was an attempt on the last, as on the first trial, to prove that the city, by constructing a man-hole or intake on Phister Avenue south of appellant's property, and a small brick drain for conducting the water thereto, had increased the flow of water into the sewer to such an extent as to contribute to the inundation of appellant's property. We are unable to discover from the evidence any satisfactory proof that the city constructed the man-hole in question, though it did construct the brick drain. But conceding that it constructed the man-hole, neither that fact, nor the constructing of the drain, as said in the former opinion and for the reasons therein given, constituted an adoption by the city

of the sewer. As to the brick drain and intake referred to, we think it conclusively established by the evidence that it did not serve to conduct any additional water into the sewer, but only emptied therein the surface waters, which, by reason of the conformation of the land, would naturally have flowed into the sewer without the drain. I'. is appellant's contention, however, that but for the intake and drain, the water coming down Spaulding Alley would pass over the sewer to Maddox Alley; but this can not be true, because the sewer, which is the natural water course, crosses Phister Avenue one hundred and thirty feet east of Maddox Alley. According to the proof, we think it reasonably clear, that instead of the city's causing an increase in the flow of water that entered the sewer above appellant's property, it has been decreased by drainage constructed on the south side of Fourth Street, which carries to Market Street a considerable part of the water that falls within the water shed drained by the sewer.

It does not matter that appellee constructed the brick drain and intake to accelerate the flow of surface water into the sewer, unless it served to cause a diversion of the water from a natural course which would have emptied it in some place other than the sewer. We do not understand that the law forbids the gathering and discharge of surface water into a stream or channel at a place where it would naturally flow. It is forbidden, however, where the water is diverted from a natural course where it had been wont to flow, and is, by such diversion, made to empty itself into a different and unaccustomed channel or stream and thereby so increase the quantity and flow of water therein as to inundate and injure the lands of property owners upon or contiguous to such channel or stream. Newport News and M. V. Co. v. Wilson, 16, R. 262, Mizell v. McGowan, 129, N. C., 93, 85, Am. State Reports, 705. But it does not appear from the evidence i_ this case that the drain and intake served to run into the sewer any quantity of water that would not naturally have emptied itself therein and contributed to the inundation of appellant's property, in the absence of the drain and intake. Our consideration of the evidence leads us to the conclusion that appellant on the last trial, as on the first, failed to make out her case, hence the trial court committed no error in peremptorily instructing the jury to find for the appellee.

Our attention has been called by the brief of appellant's counsel to certain denials of appellee's answer, which it is claimed admit it constructed and maintained the sewer, and only put in issue the question of its negligence in the matter of its construction and maintenance. It is also contended that the answer is, in part, made up of conjunctive denials, which leave in doubt what the pleader meant to deny. The first objection to the pleading in question, even if made in the court below, could not have prevailed, because the answer of appellee to the amended petition cured the defect in the original answer, as it expressly denied the appellee constructed, adopted or maintained the sewer.

The second objection is equally untenable, because the defects in the answer, to which it refers, were if not waived by the appellant's failure to demur to the answer in the court below, cured by the verdict and judgment. Whatever may have been the defects in the answer, the issues were treated on the trial, and the proof directed to them, as if they had been properly presented by the pleadings. This being true it is too late for appellant to complain of defects in the answer.

In Wilson v. Hunt's Admr. 6 B. Monroe, 379, this question was decided as above indicated and in discussing it the court said:

"When the verdict can be fairly considered as establishing between the parties the very fact which should have been, but it is not precisely averred in the declaration, and especially when it clearly appears that the particular fact was understood by the parties to be the point in issue to be decided by the jury, it would be unnecessary for the ends of justice, and would be more than useless to remand the case that it should again be presented for consideration of the jury."

In Rogers v. Felton, Receiver, 98, Ky., 148, in deciding the same question, we said:

"The answer affords a clear instance of bad pleading, strictly construed it admits that the killing (of a horse) was done negligently or carelessly, but not 'to the damage of the plaintiff.' A demurrer to it must have been sustained, because no inferences can be indulged in to its advantage. But after verdict a different rule prevails.

"As said in Daniel v. Holland, 4 J. J. Marshall, 18, 'the sensible and practical rule is that a declaration

will be good after verdict if it contains allegations from which every fact necessary to entertain the action may be fairly inferred.' This is, of course, applicable to a case where answer does not state, or defectively states a defense.''

It will be found that the following additional authorities, as well as others not cited, all of this jurisdiction, approve the doctrine announced in the cases, supra. Aiken v. Gooch, 7 R. 100; Drake's Admr. v. Semonin & Dixon, 82 Ky., 291; Martin v. Richardson, 14 R., 847; Harlow v. Supreme Lodge Knights of Honor, 23 R., 456; L. & N. R. R. Co. v. Copas, 95 Ky., 460; C. & O. Ry. Co. v. Thieman, 96 Ky., 507; Ky. Shoe Mfg. Co. v. Carroway, 136 Ky., 581.

Judgment affirmed.