## Anderson et ux. v. City of Ludlow.

(Decided April 18, 1933.)

BLAKELY & MURPHY for appellants.

JACKSON & WOODWARD for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellants, Fred Anderson and his wife, Bertha Anderson, brought this suit in the Kenton circuit court against the city of Ludlow to recover damages to their real estate occupied by them as a home, caused by the alleged insufficiency of the construction and maintenance of the sewer system.

Appellants in their petition alleged that they are, and were at all times complained of, the owners of a six-room, two-story brick house, situated on the northwest corner of Park and Laurel streets in the city of Ludlow; that in the year 1925, appellee city improved Laurel, Park, and Deverill streets with concrete paving and gutters; and about the same time constructed catch-basins and connections to the sewer and thereby diverted into the sewer lines large volumes of water beyond the capacity of the sewer lines to discharge and carry off; that the water so collected and diverted into these sewer lines had not formerly flowed into the same; and that by reason of the diversion and collection of the surface water into the sewer lines the same were caused to overflow into plaintiffs' cellar, thereby damaging the foundation of their house and depositing silt and other obnoxious matter in their cellar, thereby causing the damages complained of.

Appellee, by its answer, denied certain material allegations of the petition, but admitted that it constructed a sewer line between the existing manhole in the intersection of Park and Laurel streets, and a manhole in Park street, 110 feet north of the intersection, and averred that the said sewer line provided an extra outlet for sewage from the Laurel street sewer, abutting and directly draining appellants' property; that said sewer, so constructed by it, drained *from* Laurel street and not *into* Laurel street sewer, thereby diverting in other directions a large amount of drainage which had previously flowed through Laurel street sewer. It denied that the city either constructed, maintained, or used the sewer on Park avenue or any part thereof between Lake avenue and the intersection of Laurel and Lake avenues.

In paragraph 2 of appellee's answer, it interposed as a defense that the sewer lines in Laurel street from Deverill to Lake street, and in Park street from Laurel street south to Lake street, were constructed by J. J. Weaver, as a part of the development of the subdivision

(which includes appellants' property and other adjacent territory), which at that time lay entirely outside of the corporate limits of the city of Ludlow, and at the time said sewers were constructed by Weaver, the entire property set out and described in the petition was not in the corporate limits of the city of Ludlow, and that the sewer lines in Laurel street and Lake street, of which plaintiffs are complaining, is the same sewer line which was constructed by Weaver prior to the time said property was annexed to the city of Ludlow, and at the time plaintiffs' house was erected; and at the time plaintiffs purchased said property, in the year 1920, it was outside the corporate limits of the city and that the city had not at the time he purchased his property, or at any other times, acquired or owned the said sewer lines or undertook to manage or control same; that in the year 1925, appellee city annexed the territory complained of, including appellants' property, and caused certain parts of Laurel street, Deverill street, and Park street to be constructed by grading and paving same with concrete driveways, including catch-basins and manholes in connection therewith, and that by reason of the grading and paving of the streets and the construction of the said catch-basins, a large portion of the surface water, which formerly flowed down Laurel street in the vicinity of appellants' property, was diverted in other directions, and a much smaller quantity of water has flowed down Laurel street than previously did; that the grading and improving the streets did not cause any additional surface water or other drainage to flow down Laurel street or into appellants' sewer, or otherwise cause the overflow or damages complained of, but on the contrary the said improvement diverted a large amount of surface water and sewage in other directions and thereby lessened the burden of the sewer lines complained of.

Appellant Fred Anderson testified that he purchased his property, which is the subject of this action, in the year 1920, prior to its addition to the city, and that the sewer was connected to his house at the time he purchased it. At that time Laurel street, Park street, and other adjacent streets were unimproved and the surface was sand and gravel; that in the year 1925 the city annexed this territory including his property and the streets complained of, and immediately

thereafter improved the streets by grading and surfacing with concrete and constructed certain catch-basins in connection therewith; that no water flowed into his cellar prior to the improvement of these streets; that the water overflowed and accumulated in his cellar at various times in the years 1927, 1928, and 1929; that in the year 1929 the city constructed a catch-basin and emergency sewer from the manhole on Laurel street to the other manhole on Laurel street north of the intersection of Park and Laurel and about midway the block between Park and Deverill; that the construction of this catch-basin, manhole, and extension sewer relieved the situation; and that the water did not overflow his cellar thereafter.

Roland R. Payne, witness for appellants, stated that he was a civil engineer, and that in the study of his profession he made a particular study of sewage engineering. He stated that he made a survey of the sewer connections and elevations in the neighborhood of Park and Laurel streets and made a map of the entire territory, showing the streets, elevations, catch-basins, and all sewer lines, houses, and other features necessary in connection therewith. He stated that he located sanitary sewer lines on Laurel street, between Deverill and Lake streets and in Park avenue, west from Laurel street and also east from Laurel street, and located the houses connected to these sewers and determined the level of cellars (including plaintiffs'), catch-basins, manholes, and all other features necessary to determine the sufficiency of the sewage system. Judging from the map prepared by this witness, which is filed with the record, and from his testimony, it is apparent that he was well advised and thoroughly understood the entire situation with reference to the construction and functioning of the sewers and other causes contributing to the matters complained of. He testified in substance that the sewers were eight-inch vitrified pipe, and from an engineering standpoint were sufficient. We note the following question and answer thereto:

"Well, what would you say with reference to the adequacy—taking into consideration the normal rainfall and the amount of sanitary sewage that flows from these lines?"

In answering this question, after making preliminary

explanations with reference to different types of sewage lines, he concluded his answer in this language:

"As an engineering point, it is adequate to serve both the storm water lines and the sanitary lines. * * *

"Question: Now, assuming in this particular situation that during rains and before this connection was made between the manholes at the point west of Park Avenue, that water and sewage came up into the cellar of Mr. Anderson's house to a depth of several inches or more, what would you say was the cause of that? Answer: That condition came about due to development of the area and it explains why Mr. Anderson was not bothered with sewage flowing into his cellar during the early years of his residence in that particular place; new houses were constructed, concrete streets were laid and more houses were connected into the system which impoverishes the system very rapidly. The rain water that falls on that area can disappear in twice less time than by being absorbed as it previously was."

This witness further testified that after the improvements of the street a portion of the surface water, which, prior to the improvement, flowed south on Laurel street, was diverted in other directions; that there was a summit at the intersection of Deverill and Laurel streets, and after the improvements of the streets a portion of water falling on Deverill street and immediately north thereof on Laurel street drained to a ravine some place north of Deverill street and to the east and west on Deverill street and north of Laurel street. Before the improvement of the streets, the surface water, diverted by the improvements as above indicated, flowed south on Laurel street in the neighborhood of appellants' property. It is apparent that the improvement of the streets and the construction of the relief catch-basins and extension sewer constructed by the city lessened the flow of the water into the Laurel street sewer and in the vicinity of appellants' property, instead of increasing it.

J. J. Weaver, testifying for defendant, appellee, stated that he formerly owned the property now owned by appellants and he conveyed it to them about the

year 1920; that about the year 1902 or 1903, this section was laid off and dedicated by him or a realty company with which he was connected, and that he constructed the sewer lines along Laurel and Park avenues many years prior to the annexation of this territory to the city; and that there was a manhole in the intersection of Park and Laurel, entering into the sewer and a pipe leading from that corner of the manhole that took the surface water to the manhole. He stated that the soil, surface of the street, was sand and gravel, which readily absorbed surface water; that the general flow of the water from Deverill street toward Park street before it drained, would run all the way across down to Lake street.

W. L. Glazier, city engineer for the city of Ludlow, testifying for defendant, stated that he prepared the plans and specifications for the construction of Laurel street from Deverill street to Lake street when it was built in 1925, and made a survey of the drainage before the streets were constructed, and that there was an inlet at the northeast corner of Park and Laurel that drained into the manhole and into the sewer at the time the streets were built. He stated that when the streets were improved the original pipe that had been there was still left there, except he added an extension of eight or ten feet, which extension did not affect the drainage.

Counsel for appellee asks the witness this question: "Do you know what territory was drained by that inlet prior to the time the streets were constructed?" To which question counsel for plaintiff objected and made this statement: "Our claim is that the condition had increased the flow of water." We conclude from the above-quoted statement that plaintiff, from this point on, rested his case upon the theory that the improvement of the streets accelerated the flow of the water which produced the overflow of appellants' cellar. This is in harmony with the testimony of Roland R. Payne and other witnesses for appellant. The witness Glazier corroborated other witnesses, in that the grading and improving of the streets diverted a considerable amount of surface water in directions other than Laurel street, thereby relieving the Laurel street sewer instead of increasing its burden.

At the close of all the testimony, the court peremp-

torily instructed the jury to find for the defendant. A motion and grounds for a new trial were overruled, from which results this appeal.

There appears in the record a memorandum opinion of the trial court stating his reasons for the peremptory instructions given, in which he states that the city did not construct or adopt the sewers in question which caused the damages complained of. Conceding that the court was correct in its conclusions in that the city was not responsible for the alleged damages to plaintiffs' property, we are hardly able to agree with him on the theory he assigns. If the acts of the city in grading and improving the streets, catch-basins, etc., had diverted the surface water from additional territory into plaintiffs' sewer and thereby increasing its burdens, it would have been responsible to plaintiff for its acts, notwithstanding it did not construct or adopt the sewers in question. But we are unable to conceive that there is any evidence conducing to show that the acts of the city diverted water from additional territory or otherwise increased the burden of plaintiffs' sewer. It may be true, however, that the paving of the streets and the erection of houses in the territory in question, after its addition to the city, accelerated the flow of the water into the sewers, thereby crowding its capacity which resulted in the overflow of appellants' premises. Having reached these conclusions, the remaining question to be determined is whether or not a municipality is responsible in damage for causing the acceleration of the flow of water over streets or into sewers by reason of having paved the streets.

It has been repeatedly held by this court and many other jurisdictions, that a municipality is not liable in damages for accelerating the flow of water by the construction or improvement of streets so long as it does not divert surface water from any additional territory.

In the case of City of Ludlow v. Broderick, 181 Ky. 123, 203 S. W. 1082, 1083, the court said:

"So long as the volume of the water remains the same and is confined to its usual and ordinary course there is not actionable wrong in facilitating its flow by cleaning the channel or leveling the surface so as to let it pass without obstruction or run rapidly. A mere acceleration of the flow of water is not an actionable injury."

The case of Bowling Green v. Stevens, 205 Ky. 161, 265 S. W. 495, presented a state of facts similar to the instant case.

The cause of action relied on in the case supra was that the city increased the volume of water by the construction of buildings and streets in the city and the closing of sink holes which afforded an outlet for the water. It was argued that the new buildings and streets had the effect of causing to flow into the drain a quantity of water which would have been absorbed by the natural surface of the land. It was held that so long as there is no substantial change in the natural flow of water the city would not be responsible for a mere acceleration of the flow by reason of the various improvements. To the same effect is the case of Brooks v. City of Maysville, 151 Ky. 707, 152 S. W. 788.

The uncontradicted testimony of Weaver and Glazier, which is to a great extent corroborated by the testimony of appellants' witness Payne, shows that the sewer lines complained of which directly caused the overflow of appellants' premises were the same sewers constructed many years prior to the addition of the territory to the city of Ludlow, and that the city did nothing more than pave the streets and construct certain inlets and catch-basins which tended to relieve the burden of appellants' sewer. It is further shown by uncontradicted testimony of a number of witnesses that grading and improving the streets diverted surface water in other directions which formerly found its way into plaintiffs' sewer. It is true that the overflow of appellants' premises, resulting in the damages complained of, did not occur until after the city had improved the streets. The reason therefor, we think, is very obvious. Prior to the improvement of the streets, a large portion of rainfall was absorbed by the soil and found its way slowly into the sewers, which at that time were sufficient in size to drain the water as fast as it seeped in from the soil. But the improvement of the streets accelerated the flow of the water which found its way into the sewer, in the language of appellants' witness Payne, "in twice less time than being absorbed as it previously was."

The fact that the trial court did not rest its judgment upon the proper theory does not preclude this court from considering the entire case. If the judg-

ment was correct upon any ground manifested by the record, it is not material that it may have been pronounced upon an insufficient or wrong reason. Dwiggins v. Howard, 247 Ky. 746, 57 S. W. (2d) 649, and cases cited therein.

For reasons herein indicated, we conclude that the overflow of plaintiffs' premises and the injury resulting to his property therefrom, if any, was caused by the mere acceleration of the flow of water into the sewers which existed prior to the addition of plaintiffs' property to the city, caused by the improvement of the streets and the general development of the territory for which, under the authorities herein cited, the city is not responsible.

Judgment affirmed.