## Board of Trustees of Town of Auburn v. Chyle.

(Decided May 22, 1934.)

COLEMAN TAYLOR for appellant.

O. M. SMITH for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Mrs. Hatcher Chyle instituted this action against the city of Auburn, a city of the sixth class, to recover damage for the "negligent failure of the city to provide sufficient sewers, catch basins and drainage to prevent surface drainage from being so collected and concentrated at a point where same would overflow said catch basins, sewers and ditches in such a manner as to dump same onto her property." She charges the city "regraded, raised and changed the surface of the streets and placed metal thereon and caused ditches, drain basins and sewers to be cut along and over said improved streets in such a manner as caused the water to collect at a given point where it overflowed the channel provided for carrying it and was thereby dumped out and over onto her property," thereby "covering her entire property to the depth of several inches, running

under her house and into her house and causing the same to decay."

The general demurrer filed to the petition was not passed upon by the court. By an appropriate pleading issues were joined, and on the evidence adduced a verdict was returned in her favor of $750. The city requested the court to direct a verdict in its favor, which the court declined to do. It is here complaining, inter alia, of the action of the court refusing this instruction.

The streets of the city, about twenty years before the filing of this action, were macadamized a width of about 14 feet, with drains or ditches on both sides. Mrs. Chyle acquired title to her lot in 1922, in which year she erected a dwelling thereon. A portion of her lot is located at one of the lowest points in the city. The formation of the territory in which the streets are located causes the rainfall to drain in the direction and onto a portion of her lot. At one time the territory comprising the lots and streets involved was owned by O. M. Crewdson. At that time sink holes were at the low point on and near the lot of Mrs. Chyle into which the surface water drained. In later years a colored man occupied a small residence situated on or near a portion of the rear of the lot of Mrs. Chyle. On account of the water flowing from the surface of the territory where the streets now involved are situated, around and about the dwelling occupied by the colored man, it became known as the "Floating Palace." A drain has existed near the line of Mrs. Chyle's lot and that of the adjoining lot into which the water from the street flowed, and passed on to the rear of her lot. The period of time this drain has existed is not clearly shown by the evidence. Mrs. Chyle's statement was that the drain across her lot was made by the laying of a pipe line. The lower end of this drain for some time before the bringing of this action was stopped up and interfered with the flow of the water. After the streets were macadamized, at irregular intervals, the drains or ditches on or along the sides thereof were cleaned out by the city authorities. The macadam became worn, lower at some points than others; "duck nests" or "pot holes" were in the streets, and on account of their condition, about two years before she brought this action, the city authorities caused the streets involved in this action to be scarified, crushed stone spread on them, rolled, and then constructed what is commonly known as a traffic-bound

surface; the drains on the side of the streets were opened up for the purpose of carrying the water from the streets. A ditch at the old Crewdson Hotel, or where it was formerly located, was cleaned out by the city authorities. It carried the water out between ''the back of Uhl and Company's Drug Store and on toward Mrs. Chyle's property.'' On Pearl street, back of the Utilities Company, the water shed back of the electric shop and Mrs. Howlett's, to the creek. In 1931, this ditch was opened by the city. It had previously existed, but was made no deeper.

Without further detailing the evidence, it may safely be said it sustains the allegations of the petition as herein reproduced, but there is no evidence showing either negligence or bad faith of the city.

It is the theory of Mrs. Chyle that, ''when a city undertakes to make improvéments or alter or reconstruct old ones, it then assumes the duty of completing and keeping them in such condition that the property of the citizens will not be injured thereby.'' To sustain this statement of the law, she cites Campbell v. City of Vanceburg, 101 S. W. 343, 30 Ky. Law Rep. 1340; City of Louisville v. Knighton, 100 S. W. 228, 30 Ky. Law Rep. 1037, 8 L. R. A. (N. S.) 478; Harney v. City of Lexington, 130 Ky. 251, 113 S. W. 115; City of Dayton v. Rewald, 168 Ky. 398, 182 S. W. 931; City of Henderson v. McClain, 102 Ky. 402, 43 S. W. 700, 19 Ky. Law Rep. 1450, 39 L. R. A. 349; City of Lexington v. Chenault, 151 Ky. 774; 152 S. W. 939, 44 L. R. A. (N. S.) 301. Sustaining her argument, she quotes from City of Louisville v. Leezer, 143 Ky. 244, 136 S. W. 223, 224, this statement:

''A municipal corporation is liable to a property owner who has been damaged directly or indirectly by the action of the municipal authorities in the improvement or repair of its streets or other municipal improvements.''

She also cites City of Louisville v. Norris, 111 Ky. 903, 64 S. W. 958, 959, 23 Ky. Law Rep. 1195, 98 Am. St. Rep. 437. It announces the principle:

''When a municipality determines to change the natural order of things, by altering the surface drainage, and collecting it into artificial channels, it cannot fail to use ordinary good judgment in adopt-

ing the plan of the work, without liability to any person injured thereby.''

The principles enunciated in the cases cited by her are consonant with the principle that lower lands are subject to the servitude of receiving the ordinary and natural flow of surface water, and the facilitating and accelerating the flow of the surface water by leveling the surface, the quantity of flow not being increased nor the directions changed, are not actionable. The prevailing rule reiterated in City of Ludlow v. Broderick, 181 Ky. 123, 203 S. W. 1082; Franz v. Jacobs, 183 Ky. 647, 210 S. W. 163; Thoman v. City of Covington, 62 S. W. 721, 23 Ky. Law Rep. 117; City of Bowling Green v. Stevens, 205 Ky. 161, 265 S. W. 495; Brooks v. City of Maysville, 151 Ky. 707, 152 S. W. 788; Anderson v. City of Ludlow, 250 Ky. 204, 62 S. W. (2d) 785, as well as those cited by Mrs. Chyle, is the city is liable to a property owner who has been damaged by the collection of the surface water and its discharge upon his premises, provided the city did any acts that caused an accumulation of water at the point charged; but, if the surface water accumulated at the point in question and overflowed the complainant's premises independent of any act of the city, such owner cannot maintain an action against it therefor. If, in the construction and maintenance of the drains or ditches on the sides of the streets, the course of the surface water was changed and caused to accumulate at a definite point and overflow the property of Mrs. Chyle, she would be entitled to recover therefor the damage she sustained by reason thereof. She failed to develop facts bringing her cause within the accepted rule, controlling in such cases. She did not establish that the city did some act that produced the injury to her property. The drains or ditches may have been inadequate to carry off the surface water of ordinary rainfall, as the same fell or accumulated on the streets, still the city had nothing to do with the collecting of the water at a given point and causing it to overflow her property, other than surfacing and repairing the streets in the ordinary and usual way with necessary and suitable material. The fact the streets were scarified, raised by the use of the material necessary to surface them, preventing the streets from absorbing the rainfall, and thus caused the water to reach her property, affords her no cause of action. She is not entitled to recover damages, if any, caused by the flow of the

surface water onto her premises, of extraordinary or unusual rainfall. It is not proven the city negligently or in bad faith constructed the surface of the streets and opened up the drains or ditches. City of Paintsville v. Preston et al., 248 Ky. 591, 59 S. W. (2d) 542.

The evidence developed by Mrs. Chyle shows the city merely performed its duty in the repairing and re-surfacing the streets involved, and opened up the drains on the sides thereof, needed to take care of the rainfall, and, after it did so, the surface water accumulated at the same point, flowed in the same drains or ditches (the same being merely repaired or cleaned out), and over-flowed Mrs. Chyle's premises in the same way it did before the acts of the city were performed in reference to repairing the streets and cleaning out the drains or ditches.

Other questions are debated in the briefs of the parties. It being our view the court erred in refusing to direct a verdict for the city, we decline to consider them.

Wherefore the judgment is reversed for proceedings.