# Wright v. Sales, Inc., et al.

(Decided Jan. 15, 1935.)

M. JOSEPH SCHMITT for appellant.

SAMUEL S. BLITZ and LAURENCE S. GRAUMAN for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, Floyd Wright, brought this suit against William Sales, individually, and Will Sales, a corporation, of which William Sales was president, to recover damages for personal injuries which appellant sustained by falling from a ladder scaffold erected against the front wall of appellees' building.

The appellant alleged in his petition that the scaffold was defective, and its defective condition was known to appellees, or could have been known by the exercise of ordinary care; but was not known to him, and could not have been known by the exercise of ordinary care.

Appellant claims that he was employed by and working for William Sales or Will Sales, Inc. Appellees claim and pleaded that they had employed Joe Travis, an independent contractor, to do the work, and that appellant was the employee of the independent contractor, and denied that appellees had any connection with the employment of appellant, and therefore were not responsible for his alleged injuries.

At the close of the evidence, the court directed a verdict for appellees, defendants below, on the ground that Joe Travis was an independent contractor and appellant was not the employee of the appellees, and, from

a judgment dismissing appellant's petition, he prosecutes this appeal.

For grounds of reversal, appellant insists that the evidence with respect to the issue as to whether or not Joe Travis was an independent contractor or only the foreman or boss for appellees was conflicting, and the issue should have been submitted to the jury.

Appellant testified that he knew the ladders on which the scaffold was erected were defective before he ascended to the scaffold. He said that the appellee William Sales appeared on the premises and ordered him to ascend the ladder to the scaffold, which was about 20 feet above the ground, for the purpose of replacing the metallic letters or words "Will Sales," which letters had been removed from the wall for the purpose of being replated. He said that he told Mr. Sales that the ladders were defective, and that Mr. Sales told him to "get up or get off the job," and, rather than lose his job, he obeyed the orders of Mr. Sales, and ascended the ladder to the scaffold, and a few minutes after he reached the scaffold a plank on which he was standing tilted and caused him to fall. Appellant erected the scaffold by placing two ladders a certain distance apart against the wall of the building and fastening "jacks" to the rounds of the ladders and placing planks on the jacks on which to stand while placing the letters. Mr. Sales denied that he appeared on the premises or gave appellant orders to ascend the ladder. Mr. Sales and Joe Travis both testified that Mr. Sales contracted the work to Joe Travis and Travis employed appellant and paid him; but their evidence, however, is contradicted to some extent by appellant and other witnesses in his behalf. But it is contended for appellant that, even though Joe Travis was an independent contractor and appellant was his employee and had knowledge of the defective condition of the ladder, yet the act of William Sales in appearing on the premises and giving orders to appellant to ascend the ladder, and coercing him to do so under threat of discharging him, rendered the appellees liable for the injuries, and that this issue should have been submitted to the jury. But for the purpose of determining this case we need not determine that question, nor whether or not appellant was the employee of appellees or Joe Travis. The only question necessary to determine is whether or not appellant is entitled to recover in any event.

Appellant testified that loose rounds or rungs in the ladder caused the plank to tilt, resulting in his fall. But it appears from his testimony as a whole he was stating a conclusion rather than a fact. The pertinent part of his testimony on direct examination with respect to the direct or proximate cause of his fall is as follows:

"Q. You went up on top of the scaffold as he [Sales] directed you to go? A. Yes, sir.

"Q. Then tell the jury what happened if anything? A. About the only thing I can tell the jury that happened was a bad rung in that ladder caused the board to tilt."

We note the following questions and answers thereto on cross-examination:

"Q. And with full knowledge that the ladder was defective you went up on it? A. Yes, sir. ⊛ ⊛ ⊛

"Q. How much did that board tilt? A. I could not say that. The accident happened so sudden I couldn't see what happened.

"Q. You don't know what caused the accident? A. I think I know, but I don't know—

"Q. You don't know actually? A. No.

"Q. When you put the jacks up, had you ever used those jacks before? A. Yes, sir.

"Q. Were they defective? A. Not that I know of.

"Q. Was the board defective? A. No..

"Q. When you fastened the jacks on to the ladder was there anything defective in that part of the ladder? A. In which part?

"Q. Where you fastened the jacks on? A. On the rounds of the ladder, I should say not.

"Q. You fastened them on, didn't you? A. Sure.

"Q. There was nothing defective with the ladder there? A. Not that I know of.

"Q. And nothing defective with the jacks? A. No, sir.

"Q. And nothing defective with the board? A.

No, sir; there could not have been anything defective about the board.

"Q. Where were the defective parts in that ladder? A. In the rounds of the ladder.

"Q. Whereabouts, which rounds? A. Do you want me to call them off by number of something?
* * *

"Q. Was there any defect where the jacks were? A. If there had been I would not have put them on there if I had known it.

"Q. Was there any defect there; did you see any defect? A. Not that I know of, no, sir.

"Q. You were right there in sight of it and looking right-at it, were you not? A. Why, sure."

Appellant testified that he had worked for a telephone company for a number of years and had had considerable experience in handling ladders and erecting and working on scaffolds similar to the one in question; that neither the jacks nor the rounds of the ladder to which the jacks were fastened were defective. He gives it as his conclusion that some round somewhere in the ladder was loose and caused the jack to slip.

The fact that some of the rounds in the ladder were loose, if they were, does not afford appellant any right of recovery unless such defect was the proximate cause of his fall. City of Dayton v. Fox, 254 Ky. 51, 70 S. W. (2d) 961; City of Paducah v. McManus, 256 Ky. 405, 76 S. W. (2d) 254.

In appellant's petition, he makes the general allegation that the scaffold was defective, but in his testimony he does not point out or name any defect in the scaffold other than that some of the rounds of the ladder were loose. But, according to his own testimony, there was no defect in the rounds of the ladder to which the jacks were fastened, and he failed to show that the other rounds of the ladder which had no connection with the jack caused the jack to slip, which he claims resulted in his fall.

Inasmuch as appellant failed to show a right of recovery, a directed verdict for the defendants was proper, even though the court may have awarded it on the wrong theory. The fact that the trial court did not

rest its judgment upon the proper theory does not preclude this court from considering the entire case. If a judgment is correct upon any ground manifested by the record, it is not material that it may have been pronounced upon an insufficient or wrong reason. Anderson v. City of Ludlow, 250 Ky. 204, 62 S. W. (2d) 785; Dwiggins v. Howard, 247 Ky. 747, 57 S. W. (2d) 649.

The judgment is affirmed.