## Wallace v. Schneider et al.

April 19, 1949.

David R. Castleman for appellants.

Lawrence S. Grauman for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The appeal is from a judgment refusing to grant appellants an injunction, (1) to require appellees to restore an alleged division fence, and (2) to enjoin and restrain appellees from maintaining certain roadways, sewer pipes, culverts, ditches, and gutters constructed in a subdivision owned by them, and which appellants alleged causes water to be discharged in unnatural quantities and at unnatural places on the lands of appellants. The judgment fails to mention the fence but failure to grant the injunction requiring appellants to restore it was an effectual denial of the relief sought, and will be treated as such on this appeal.

In July, 1947, appellants purchased a valuable home in Jefferson County on the north side of Gardner Lane which lies between Bardstown and Newburg roads. The home is situate on an estate consisting of sixteen or seventeen acres. Adjacent to the eastern boundary of appellants' land was a certain tract of unimproved property consisting of approximately thirteen acres, and which was acquired by defendants in May, 1947. At the time each of the parties purchased their properties, there was a fence standing on the land acquired by the Schneiders. The fence ran northwardly at right angles from Gardner Lane to a point on the Schneiders' property, about twelve hundred feet distant from the lane. The fence had been constructed many years previous to the year 1947. Shortly after the Schneiders acquired their property they removed the fence, first having given

the Wallaces verbal notice of their intention so to do, but without having given them written notice of such intention. The removal of the fence was pursuant to a plan of the Schneiders to establish a subdivision. In further pursuance of this plan appellees graded some of the property, built roads, and established and built a sewer system to collect and dispose of surface water on the Schneiders' property. Appellants' property is lower than that of appellees; and the former alleged and now contends that by building the roads, sewers, and gutters, and by changing the contour of the land in grading it, appellees have collected the rainfall and surface water unnaturally in greater quantities and caused it to be discharged unnaturally in greater velocity onto the property of appellants.

Appellees defended the action upon the ground that no written notice of the removal of the fence was required because it was not a "division fence" within the meaning of KRS 256.050 and 256.060 which provide that a division fence may not be removed by one of the adjoining landowners except between December 1, and March 1 of any year, and without the party seeking to remove same giving three months previous notice in writing to the owner of the adjoining land; and that the work in respect to the establishment of the subdivision did not cause water to be discharged on appellants' land either in unnatural quantities or unreasonable velocity, but on the contrary, all water now passing through the sewer naturally flowed into the drain in which the sewer has been laid and was cast onto appellants' property in even greater quantities than after the construction of the sewer. Their contention that it flowed onto appellants' property in greater quanties before the sewer was laid than now is based on their showing that approximately one-third of the land which naturally drained into the channel wherein the sewer was laid has been diverted and carried away from both properties by sewers extending to Gardner Avenue.

To support their contention in respect to the drainage branch of the case, appellants rely on Pickerill v. City of Louisville, 125 Ky. 213, 100 S.W. 873 and cases therein cited; Stone v. Ashurst, 285 Ky. 687, 149 S.W. 2d 4; Gott v. Franklin, 307 Ky. 466, 211 S.W.2d 680; and Board v. Schneider, 301 Ky. 389, 191 S.W.2d 418.

Appellees rely on City of Bowling Green v. Stevens, 205 Ky. 161, 265 S.W. 495; Manteufel v. Wetzel, 133 Wis. 619, 114 N.W. 91, 19 L.R.A., N.S., 167; Dayton v. Drainage Commissioners, 128 Ill. 271, 21 N.E. 198; and Flesner v. Steinbruck, 89 Neb. 129, 130 N.W. 1040, 1041, 34 L.R.A., N.S., 1055. In addition to the cases cited by appellees, we are of the opinion that the decisions in City of Ludlow v. Broderick, 181 Ky. 123, 203 S.W. 1082, Board of Trustees of Town of Auburn v. Chyle, 256 Ky. 283, 75 S.W.2d 1039, and cases therein cited, support appellees' contention. We will attempt to distinguish and reconcile the two lines of cases.

In the Pickerill case, supra, the Court laid down the principle that the owner of the upper ground has no right to divert the flow of surface water from its natural channel into a new channel made on the lower ground, nor has he the right to collect into one channel waters which naturally flowed onto his neighbor's land through several channels and thereby increase the flow onto the lower land at a single point. In the Stone case, supra, the defendant had diverted the flow of surface water from its natural course and increased the flow onto the lower estate in unnatural volume. The Court held that such conduct on the part of the defendant was actionable. The cases recited and relied on in that case are Louisville & N. R. Co. v. Stephens, 188 Ky. 1, 220 S.W. 745 and Grinstead v. Sanders, 56 S.W. 665, 22 Ky.Law Rep. 51 In the Louisville & N. case the defendant had diverted the water from its natural course and caused it to overflow the lands alongside it. The Court held that this constituted a cause of action. In the Grinstead case the defendant drained swamp waters and artificially cast it on the plaintiff's land, and in addition thereto, erected a drain which caused water unnaturally to accumulate on defendant's land. The Court held that this constituted a cause of action. In the Gott case, supra, the defendant, by artificial means, collected water from her garden and caused it to flow onto the plaintiff's property in accelerated and larger quantities than otherwise it would have done. The Court held this conduct to be actionable. In the Board case, supra, the defendant diverted surface water from its natural course and caused it to collect and be thrown upon his neighbor's land in an unnatural course. This likewise was held to be actionable. In each

and every case relied on by appellant water was diverted from its natural drain and caused to be cast upon complainant's property in unnatural channels and increased volume.

In City of Bowling Green v. Stevens, supra, we held that whilst an upper proprietor has no right to divert surface water which would not otherwise flow in that direction, he has the right to ditch and drain surface water from his land into natural channels even though the water thrown upon lower lands thereby is increased; and as a necessary corollary the upper proprietor is not liable for any increase in the quantity or volume of water accumulating in the natural drain due to the construction of streets or erection of the houses on the lands of the proprietor of the upper estate. In Manteufel v. Wetzel, supra, a Wisconsin case, it was held that no action will lie against the upper proprietor for ditching and draining his own land whereby surface water is caused to flow in its natural direction, although, had the ditching and draining not been done, some of the water would have spread over a wider area and would have percolated to some extent into the ground of the upper proprietor; however, the upper proprietor would be liable if he tapped a new water shed and caused surface water to flow into one which it otherwise would not have found access to. In Dayton v. Drainage Commissioners, supra, an Illinois case, the Court held that the upper proprietor may hasten the flow of surface water along natural depressions or drain ways and to this end may ditch or construct underground drains so long as he does not divert water from its natural flow. In Flesner v. Steinbruck, supra, a Nebraska case, it was held that the upper proprietor was not liable for an accelerated and increased flow of surface water upon his neighbor's premises caused by the digging of ditches and construction of a culvert along a natural drain. Returning to decisions of this Court, we call attention to City of Ludlow v. Broderick, supra, wherein the Court held that merely accelerating the flow of water from the dominant estate to the servient estate does not constitute a cause of action. In Board of Trustees of Town of Auburn v. Chyle, supra, it was held that lower lands are subject to the servitude of receiving the ordinary and natural flow of surface water from an upper estate and the mere fa-

cilitating and accelerating the flow of such surface water by levelling the surface does not constitute a cause of action. It will be noted that in all the cases relied on by appellees and the last two cases herein cited, the defendants were held blameless so long as they did not divert surface water from natural channels or tap additional water sheds, even though by digging ditches and constructing culverts the flow of water was accelerated and water which naturally would have percolated into the ground was carried off through the course of the natural drainage channel. But appellants contend that the cases relied on by appellees are cases involving the liability of municipalities and a different rule prevails in respect to municipalities from that in respect to private owners of land. His assertion that all the cases relied on by appellees involve the liability or nonliability of municipalities is not completely accurate, but in all fairness it must be admitted that the Kentucky cases herein cited in support of appellees' contention are cases involving municipalities. But the rule is the same whether the defendant be a municipality or a private citizen as was pointed out in City of Bowling Green v. Stevens, supra, [205 Ky. 161, 265 S.W. 495], wherein following the statement of the general rule, the Court said "The rule has been applied in favor of a municipal corporation, * *."

Reviewing and reconciling all of the decisions referred to by both parties we find without exception that the rule applicable to this case is: The owner of the dominant estate may drain and ditch his land for the purpose of ridding it of surface water even to the extent of building sewers, gutters, and culverts without liability to the owner of the servient estate, even though such methods of ridding his own property of surface water causes such water to be accelerated in its flow onto the servient estate, so long as he does not tap additional territory from which surface waters otherwise would not have flowed through the natural drain in which the ditches, gutters, sewers, or culverts are constructed.

In the light of this rule we will examine the evidence to determine whether it was sufficient to support the Chancellor's finding which was incorporated in the memorandum opinion filed herein. The opinion reads:

"This action coming on to be heard and the Court having heard arguments of counsel, read the proof and briefs of counsel for both parties, and having visited the real estate described in plaintiff's petition, the Court is of the opinion that the defendants have not changed the natural flow of water draining from their property to the property of the plaintiffs adjoining same. Therefore, the plaintiffs are not entitled to the relief sought."

Appellant, H. C. Wallace, and his engineer, Frank J. Nelson, were the only witnesses introduced by appellants. Appellant testified that appellees had caused lots to be built, trees to be removed, roads graded, and a sewer constructed through the center of the subdivision which carried all the water collected (in the sewer) onto appellants' land; before these installations were made the Schneiders' property drained naturally onto the witness' land at points located more or less continuously along the entire division line for a distance of twelve hundred feet, and there was no heavy concentration of water discharged onto his property at any one point before the development. He filed a photograph taken from a position on his property depicting the view across the division line to the property of appellees. He testified that at the time the picture was taken a gully had begun to wash from the artificial drain toward his property. The photograph is before us and shows that brush has been piled against the fence heretofore referred to. Appellant testified that the brush was not there before Schneider commenced building the subdivision. He stated that the pressure from water coming out of the sewer had forced the brush against the fence and that at the present time the brush diffuses the flow of water, but when it eventually disintegrates the water will flow in greater quantities onto his property. At this point we call attention to the fact that the sewer built by appellees empties on their own property at a point one hundred thirteen feet distant from the property of appellants. Mr. Nelson testified that he had not viewed the property previous to its development, but counsel for appellants submitted to him photostatic copies of the subdivision plans prepared by appellees' engineer, Frank Ade. The plans show the topography of the ground both before and after the development. Mr. Nelson attempted to interpret the engineer's data appearing on the plat with the view of determining from such data the course of drainage from Sch-

neider's property to that of Wallace previous to the development, and making a comparison with his interpretation of the drainage shown on the plat after the development was completed. He estimated, by use of a scientific formula, that the water coming through the sewer pipe toward the Wallace property is two and one-half times the quantity which formerly came to that point from natural drainage, and, during rainfalls, the velocity of the water was twenty times greater than that "of the natural water flow over grass land." Mr. Nelson did not run any levels personally and did not take into consideration the fact that approximately four hundred of the twelve hundred feet of property adjoining appellants' land was drained completely away from the property of both of the parties, whereas previous to the development it had drained onto the Wallace land. Appellees introduced four civil and drainage engineers, the first of whom is Frank Ade, who drew the plans for, and supervised the construction of, the Schneider development. He was well acquainted with the properties involved, both before the commencement of the development and now. Another of the drainage engineers, Friend H. Lodge likewise was familiar with the properties before, during, and after the development. The other two engineers, Leo W. Peleske and Charles F. Bradbury, were not familiar with the properties previous to the development but are familiar with them now. The composite picture of the entire situation shown by the testimony of these engineers is; (1) no new water shed has been tapped or surface water from additional area caused to be cast on appellants' property by reason of grading, ditching, or construction of streets and sewers in the subdivision; (2) the sewer complained of casts its water onto the Schneider property at a point one hundred thirteen feet distant from the Wallace property; (3) during rainfalls the flow of water onto the Wallace property has been accelerated by the construction of the sewer which is eighteen inches in diameter; (4) the sewer complained of lies in the bottom of the natural drain, wherein all of the water which now flows through the sewer originally flowed and naturally was cast onto the Wallace property at the same place it is now received, and, (5) the surface water which formerly flowed into the natural drain has been decreased in volume by the construction of other sewers which divert the water

from approximately one-third of the original area to the north and east away from the Wallace property instead of to the south upon it. In addition to the four engineers Mr. Schneider testified to the same effect from his personal observation, and he additionally testified that the portion of the fence he removed was about four hundred feet in length and entirely on his own property. Appellees introduced Nat Levy, a real estate agent, who was familiar with the properties before, during, and after the development of the subdivision. Mr. Levy testified from his personal observation that less water now flows onto the Wallace property than did before the commencement of the development. Appellee finally introduced E. L. Badgett who had been familiar with the properties all of his life and who graded the property during the course of development under the direction of the engineers. He testified that the brush which was piled against the fence was placed there by a bulldozer and was not washed there as is contended by appellants. He likewise testified that the fence which was removed was in a dilapidated condition, down in several places, would not enclose livestock, and was from three to five feet on Schneider's side of the common property line. As stated in his opinion the Chancellor personally viewed the property.

Thus we have on the one hand appellant and one engineer, Mr. Nelson, whose testimony was a mere interpretation of a plat drawn by another engineer whose interpretation in turn was entirely different from that of Mr. Nelson's. Mr. Nelson arrived at his conclusions by use of a formula which at least two of the other engineers stated is not necessarily applicable to given conditions. The accuracy of the findings yielded by use of the formula depends on the type of soil, its ability to absorb, and other factors which were not shown to be present in the instant case. In other words, Mr. Nelson's findings were purely theoretical, whereas the conclusions of the engineers introduced by appellees were arrived at from personal observation both before the commencement, and after the completion, of the development. This apparent conflict between theoretical and practical views recalls to the memory of the author of this opinion the story of the bumblebee: It is related that for years scientists clung to the theory that the wings of a bumblebee are too frail to raise his body from the ground and to

sustain it in flight, but the bumblebee was not acquainted with this "fact," so he continued his custom of flying just the same.

It is obvious from what we have said that there was ample evidence to support the Chancellor's finding and to apply the rule pronounced in the cases relied on by appellees in respect to the drainage aspect of the case. We likewise are of the opinion that the Chancellor did not err in refusing to grant the injunction prayed for to require appellees to restore the fence because of appellants' failure to prove that the fence in question was a division fence within the meaning of KRS 256.020 to 256.060 inclusive. Appellant testified to his conclusion that it was a division fence, but he stated no fact showing that the fence was erected as a division fence by agreement, acquiescence, or compulsion so as to bring it within the purview of KRS 256.050 and 256.060.

The judgment is affirmed.