## Maggard v. Asher et al.

(Decided May 7, 1937.)

J. M. MUNCY for appellant.

M. C. BEGLEY for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This action was instituted in the Leslie circuit court by the appellant, Hallie Maggard, against Andy Asher and Lawrence Asher, his son, seeking an injunction against them from trespassing upon certain land, in which she claimed to own the fee, and cutting timber therefrom, and for damages in the sum of $200 for timber which it is alleged they had then wrongfully cut and taken therefrom.

The defendants, here appellees, answered, denying plaintiff's title to the land, alleging it was owned by Martha Asher, the wife of the defendant, Andy Asher. So contending, for the aforesaid Martha Asher there was filed an intervening petition, asking to be made a party defendant, and wherein, by counterclaim, she asserted ownership of this land lying on Simon Hollow fork of Owl's Nest creek, here involved, under and by reason of an alleged deed of conveyance to her of a boundary of land, embracing it, made by her father, Thomas Roberts, but which deed she claimed had been lost before it was ever put to record.

This intervening petition was, however, upon motion of plaintiff to strike it from the record, upon the

ground that it was neither signed nor verified by either her or her attorney, ordered dismissed.

Further, the defendants by their answer traversed all the material allegations of plaintiff's petition and by an amended answer further pleaded that the land in controversy, from which it is sought to enjoin the defendants from trespassing, lies on Simon fork of Owl's Nest creek and which land they allege is not embraced within the boundary of land, as claimed by plaintiff, which was conveyed her in October, 1929, by Joe Maggard and wife, Nancy Margaret Maggard, and which had been earlier conveyed her said grantors in May, 1903, by Thomas Roberts.

Under the issues thus made by the pleadings, it was incumbent upon the appellant (plaintiff below), as a condition precedent to obtaining the injunctive relief sought, to establish by proof that she is the owner of the legal title to the Simon fork land described in her petition. Fordson Coal Co. v. Marcum, 206 Ky. 624, 268 S. W. 289; Cornett v. Swift Coal & Timber Co., 209 Ky. 482, 273 S. W. 41. This burden the lower court found she failed to maintain, and was therefore not entitled to an injunction against defendants' trespassing on it, regardless of whatsoever right or interest therein, if any, the defendant Andy Asher might have, and dismissed her petition.

In our review of the propriety of this finding and ruling of the chancellor, it may first be noted that the appellant and appellee Andy Asher each here claim to be the owners of adjoining tracts of land situated along Owl's Nest creek and, further, that they each claim the Simon fork land in question as being embraced within their separate boundaries, which they have acquired, either by direct or mesne conveyances, from a common grantor, Thomas Roberts, who, it is undisputed, in May, 1903, conveyed the upper of these two tracts to his daughter, Nancy Margaret Maggard (in the name of her husband, Joe Maggard). Appellant contends that this tract embraces the Simon fork land here involved, which is described by the following calls of its boundary, so far as pertinent to the Simon fork part thereof:

"Thence with said John Lewis back line to the top of the mountain between Flackey and Owls Nest; *thence with a conditional line made between*

*Joe Maggard and Andy Asher down the point between the Buck Branch and Simon Fork to two marked beeches at the mouth of Buck Branch of Owls Nest."* (Italics ours.)

Plaintiff further, by way of establishing her chain of title to this tract thus described by its calls, introduces in evidence also the deed by which it was, by Robert's grantees, Nancy Margaret Maggard and husband, Joe Maggard, conveyed her in October, 1929, under the following description (in so far as it also is pertinent to the Simon Fork part thereof here involved):

"Beginning, on a marked beech and sugar-tree at the mouth of Spicewood Hollow, thence running up the creek with the John Lewis line to the mouth of Buck Fork and with said line to the top of the ridge, thence running northeastward to the top of the ridge with Bob Lewis line, thence with said line to W. J. Maggard's line, thence down the ridge with Maggard's line to the beginning."

According to the testimony of the defendants and many of their witnesses, it appears that about the same time Thomas Roberts (who was the father and grantor of both Mrs. Andy Asher and Mrs. Joe Maggard) made conveyance of this 200-acre tract of land, lying on the north side of Owl's Nest creek, to his daughter, Nancy Margaret Maggard (the appellant's grantor), he further conveyed the adjoining tract, lying on its south side, to another of his daughters, Martha Asher, the wife and mother of the defendants, Andy and Lawrence Asher, and, it is agreed, ran a conditional or dividing line between the two tracts given them.

Our determination of the one material question here presented, which is whether or not appellant has title to the Simon fork land (only here involved), and in protection of which, as the owner of title thereto, she seeks injunctive relief against defendants' trespassing on it, must in a large measure depend or turn in its decision upon the determination of what is the proper location of this dividing or "conditional" line referred to in appellant's deed.

It appears to be conceded that this dividing line extends from its beginning point in the mountain range or hills (termed, both in the deeds and maps exhibited in evidence, the "divide" between Owl's Nest creek and

Flackey's creek) in a southwestwardly direction "down the point between Buck Branch and Simon Fork to two marked beeches at the mouth of Buck Branch of Owls Nest."

The description of this "conditional" line is definite as to its beginning point, course, and terminal intersection with Owl's Nest creek at "two marked beeches at the mouth of Buck Branch of Owls Nest," but confusion arises as to the location of this "conditional" line "at the mouth of Buck Branch of Owls Nest" from the fact that there appear to be two streams called Buck branch, each of which satisfy the calls of the deed, in that they are both located on the same side of Owl's Nest creek and empty into it and are only differentiated by the fact that they are located on different sides of Simon fork.

Under such circumstances our task is here to determine this pivotal fact, as to which one of these two so-called Buck branches is to be accepted as the Buck branch at whose mouth, or intersection with Owl's Nest creek, is fixed by the call of the deed the terminal point of the "conditional" line.

Simon fork, as stated supra, runs between these two streams and is about equally distant from each. If the stream to the left or west of Simon fork is treated as being the Buck branch intended by the call of the deed, then the divisional or boundary line of plaintiff's land is thereby fixed so far down Owl's Nest creek that it does not embrace, but is to the west or below Simon fork, from which it follows that, if plaintiff's land does not extend up Owl's Nest creek far enough to include Simon Hollow within its boundary, i. e., this "conditional" line, it follows that she has no title thereto.

As appellant's right of possession to this land, as stated supra, and the relief sought of enjoining the defendants from trespassing thereon, must depend upon her showing a good title to the land in question, the burden of showing same rested upon her.

To maintain this burden, it was incumbent upon her, under this applicable legal rule and as a condition precedent to her right to obtain the injunctive relief sought against the defendants, to show that she is the owner of the Simon fork land involved, or, that is, to show that the "conditional" line made between the land

of her grantors (the Maggards) and the defendant Asher's land intersected Owl's Nest creek at a point above or to the east of Simon fork, or at the mouth of the Buck branch which flows into Owl's Nest creek at a point above Simon fork, so as to embrace the latter within her boundary; rather than, as contended by defendants, that such divisional line between their lands intersected Owl's Nest creek, not at a point above Simon fork, but at a point below it, or where the Buck branch (also called Dry Hollow), which was below, or west, of Simon fork flowed into it, thus excluding the Simon fork land from the appellant's boundary, when measured by such location of its "conditional" boundary line.

The determination of this material issue, as to which of these two so-called Buck branch streams was properly, or within the meaning of the grantor, the Buck branch he intended to designate by this call of the deed, or, that is to say, whether the grantor intended to designate by such name the Buck branch lying to the west of Simon fork, or the other Buck branch lying to the east or above Simon fork, called for clarifying extrinsic evidence to remove this ambiguity in the call, and was clearly a question of fact for the jury, or here for the finding of the chancellor, who, after due consideration of the showing made by plaintiff in support of her alleged title to the land involved and of the whole record of confusing and conflicting evidence, found adversely to her claim of ownership of this land lying in Simon hollow of Owl's Nest creek, and, so concluding, adjudged that "the branch emptying in below the Simons Fork and contended by the defendants to be the Buck Branch is the Buck Branch referred to in the deed from Thomas Roberts to Nancy Margaret Maggard, and if this be correct then the deed from Thomas Roberts to Nancy Margaret Maggard does not embrace the land in controversy on Simons Hollow." Having so adjudged, the chancellor ordered that the petition of plaintiff be dismissed and that she take nothing thereby.

Upon our review of that judgment, complained of as erroneous, we have found it extremely difficult to solve, to our own satisfaction, by reason of the inadequate maps and the conflicting testimony furnished in the record (found equally as effective for confusing as for assisting us in the determination of the perplexing boundary question here submitted), the question here

raised, as to what, by the evidence before us, is definitely shown to be the proper location of the "conditional" or boundary line between these parties' lands, although upon that determination depends the matter of plaintiff's right to the injunctive relief she seeks.

Plaintiff's right to an injunction against defendants' trespassing upon the Simon fork land here involved being dependent on her establishing title to that land, and the chancellor having found that she has failed to maintain that burden, we are, in keeping with the applicable, settled rule in such case, led to adopt, or at least decline to disturb, the chancellor's finding upon this question of fact, where, as here, our minds are left in doubt, after a careful consideration of the record, as to the accuracy of his finding.

Therefore, so accepting the chancellor's finding upon this question of fact as correct, it follows that appellant has failed to show title to the land here involved, and therefore, this being required of her as a condition precedent to securing the injunctive relief she seeks, we conclude that the chancellor's judgment, in denying the injunction and dismissing the petition, was here proper and should be, and it is, affirmed.