## Buchanan v. Sledge.
(Decided Feb. 8, 1938.)

W. D. GILLIAM for appellant.

HARPER & GOAD and A. J. OLIVER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

In an action instituted by Jake Sledge against Ewing Buchanan, it has been adjudged that the true and correct division line between the lands of the respective parties is the one claimed by Sledge and as fixed and established by processioners and that Buchanan be enjoined and restrained from erecting a fence over and beyond a line so established; that his answer and counterclaim be dismissed; and he is appealing.

The facts are that appellant and appellee own adjoining farms on Bays. Fork Creek in Allen county. Many years ago J. P. Willoughby owned the land of appellant, and G. W. Sledge owned the land of appellee. A controversy arose between them over the division line or division fence between the farms which resulted in each owner building a fence along and near the recognized line leaving a space between the fences which neighbors appropriately referred to as "devil's lane." Years later, the fence erected by Willoughby having fallen into decay, appellant or someone under whom he claims title erected what is referred to as a paling fence which consisted of slats intertwined with wire at the top and bottom. Fragments of these old fences and ridges thrown up by cultivation of the land along the fences still appear.

In his petition in equity, appellee alleged that he and those under whom he claims title have been in the peaceful, adverse possession of his farm for more than forty years and that he is still in the peaceful possession of the whole thereof, except a portion of a strip on the west side, which appellant was threatening to take possession of and was erecting a fence over the line and on appellee's land and would do so unless enjoined and restrained.

By answer and counterclaim appellant controverted the allegations of the petition and in a second paragraph affirmatively alleged that appellee had cut a ditch over and across his land which diverted and threw the water onto appellant's land, thus damaging him in the sum of $150, and he asked for judgment for that sum and that his title to the land claimed by him be quieted.

After the second paragraph of the answer and counterclaim had been traversed by reply, defendant filed an amended answer and counterclaim in which he pleaded champerty and also pleaded with particularity adverse possession of his land including the strip in controversy for more than thirty years. The amended answer was not controverted by reply.

In addition to the facts stated, it is shown by evidence that appellant had set posts along or near the line preparatory to erecting a fence and the controversy arose over the location of these posts with reference to the division line. Some years ago the Sledge lands were partitioned among the heirs, and the commissioner and surveyors appointed to partition the lands ran the line between the lands of the litigants using the Sledge title papers in so doing. When the dispute arose between these parties concerning the line, appellee attempted to have processioners establish the line, and processioners, including a surveyor, did go upon the lands and establish and mark a line. The effect of that proceeding and any question as to its legality is immaterial so far as this litigation is concerned; however, the location of the line as determined by processioners is important. The parties are in agreement that the original and correct line between the farms ran from a stone at or near the creek across the bottom lands to a stone on the hillside with a cherry tree recognized by all as being in the line. The bank of the creek where the stone was planted has filled in and the creek has gradually moved away from that corner, and according to the evidence the stone has been covered with silt and earth. When the processioners attempted to establish the line they were unable to find the stone on the hillside, but they did find a depression where all parties agreed that the stone stood and later located it nearby. They planted a stone in this depression and according to their evidence ran a straight line from that stone through the cherry tree to

a point in the creek bank where they also planted a stone. The parties are in practical agreement that the line from the stone on the hill to the cherry tree is correct, but the evidence for the respective parties varies as to where that line extended would strike the creek bank, the distance between the lines at the creek as contended for by the parties being somewhere from 12 to 16 feet. According to appellee and his witnesses, some of whom had owned or rented the land in controversy, the line fixed by the processioners was the same as the line run by the commissioner when the Sledge land was divided and the surveyor and processioners testified that in fixing the line they used appellant's title papers; that the line so established had followed the remaining fragments and the signs of old fences and ridges thrown up by cultivation of the respective farms and their evidence is to the effect that appellee and those under whom he claims title have owned and claimed, cultivated, and otherwise exercised acts of ownership up to the line, continuously since as well as prior to the erection of the devil's lane fences; that the fence posts set by appellant are on the land of appellee.

After the controversy arose and the litigation was initiated, appellant had a surveyor run the line which is claimed by him to be the true and correct line, and he and many witnesses who had known and some of whom had owned, rented, or cultivated the land testified that the line claimed by him had always been recognized as the line between the farms and followed the marks of the old fences and that he and those under whom he claimed had been in the continuous, adverse use, possession, and control of this land for over thirty years and that none of the fence posts set by him were upon the land of appellee. In the hopelessly conflicting and confused state of the evidence, no appellate court could from the record determine the correct location of the line so it will be seen that this case peculiarly calls for the application of the general rule that where from the record as a whole the appellate court is in doubt as to the correctness of the chancellor's conclusion, the judgment will not be disturbed. Maggard v. Asher et al., 268 Ky. 416, 105 S. W. (2d) 184.

However, it is contended by counsel for appellant that appellee failed to establish paper title to the land

in controversy and is not entitled to recover the strip of land adjudged to him on prescriptive title because adverse possession was not adequately pleaded. But in actions of this character it is only necessary to plead possession as against an intruder, and it might be added that if adverse possession was improperly pleaded, there was no demurrer to the petition.

It is further argued that the chancellor erred in basing his judgment for appellee on the finding of the processioners because appellee did not show compliance with Kentucky Statutes, sec. 2367 et seq. The chancellor did not base his finding on the report or the acts of the processioners, but merely found from the evidence that the line as established by them was the true and correct line between the lands of the contending parties.

It is next argued that the chancellor erred in refusing to sustain appellant's plea of champerty and in entering an order after the cause had been submitted to him controverting that plea of record. In the case of Fitzpatrick v. Vincent, 88 S. W. 1073, 28 Ky. Law Rep. 121, there was no reply to an answer pleading champerty, and in answer to contention that the plea of champerty should prevail this court in substance held that since the parties proceeded to take proof on the issue without objection and submitted the cause on the merits without motion for judgment on the pleading, it would be presumed that the answer was treated as controverted of record and this is a rule of general application in all cases. See Hunter's Ex'x .v. Mutter, 238 Ky. 396, 38 S. W. (2d) 215, and authorities therein cited.

Concerning appellant's counterclaim, a like conflict in evidence prevails. According to the evidence of appellant and his witnesses, appellee cut a ditch on his own lands that diverts surface water from its natural course and casts it upon lands of appellant. The evidence of appellee and his witnesses is that he did not cut any such ditch and has not diverted the flow of the water, but that, on the other hand, the surface water is following the natural drainage as it has since the earliest history of the lands. In this state of evidence and under the general rule referred to in Maggard v. Asher,

supra, we would likewise not be authorized to disturb that part of the judgment dismissing the counterclaim for damages.

Finally, it is argued that the finding of the chancellor is flagrantly against the evidence, but our resumé of the facts established by evidence and our conclusion concerning its effect disposes of that contention.

Judgment affirmed.