### Hacker et al. v. Clay County.

Oct. 16, 1942.

Roy W. House and A. D. Hall for appellants.

Charles C. Smith for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Claiming to be the owners of four tracts of land upon which the appellee had entered and constructed a public highway without compensating them therefor, the appellants instituted this action against the appellee to recover $1,500 for the lands taken and $2,500, damage to the residue. The appellee demurred specially to the petition on the ground that the Construction Company that built the highway and the State Highway Department were necessary parties; and following the overruling of the special demurrer and also a general demurrer, the appellee answered, traversing the material allegations of the petition, and pleading affirmatively that the road had been built by the State Highway Commission upon a right-of-way through appellants' lands conveyed to the Commonwealth of Kentucky, acting officially through its State Highway Commission. A copy of this deed, duly executed and acknowledged by the appellants on April 30, 1934, was filed as an exhibit. The

consideration was the benefit to be derived by the grantors from the improvement of the road. The right-of-way was described in the manner customarily employed in similar conveyances, that is, by its beginning and ending points and references to the "stations" shown on the survey made by the State Highway Commission. By reply appellants denied that they conveyed the right-of-way "as set up in defendant's answer", but admitted that they had signed "the pretended deed filed and made a part thereof by the defendant, but which was fraudulently obtained as will more fully appear hereinafter." In a second paragraph, the appellants, without charging fraud or mutual mistake, alleged that they had executed the deed upon the request of representatives of Clay County without understanding the meaning of the calls or where the road would be actually located, and upon the representations of the agents of the County that the road, as actually located, would not come within certain distances of appellants' dwelling and a ditch constructed by them on one of the lots, and would not touch a certain lot, or be elevated to a height in excess of that of the old road, and that if the road came nearer to the ditch than four feet, appellants would be paid $100.00 per lineal foot "for each foot so taken over said four feet"; and that "the defendant would hold said pretended deed sought to be signed and that said deed would not be accepted by the defendant in legal contemplation of the term, until it was finally ascertained and determined by plaintiffs that the road bed sought would be located as aforementioned and that said deed would not be accepted for record in legal contemplation of the term, or actually recorded until said road was actually built as above mentioned, and otherwise return said deed to plaintiffs."

These allegations were followed by others setting forth the violation of the alleged terms of the oral agreements, and that no part of the road was located in keeping therewith, that the road approached nearer than the four feet agreed upon as the limit of its approach to the ditch, and that because of the breach of the alleged oral agreements, "said deed should be reformed so as to embrace each of the omitted statements, agreements and stipulations." The reply concluded with a prayer for a judgment reforming the deed "by writing therein each of the terms, agreements and stipulations as above indicated, so as to, and making said deed conform to the

original oral agreement intended to be expressed therein as above indicated.''

Thereafter, upon motion of the appellants, the action was transferred to the equity side of the docket ''for preparation and trial on reformation of the deed mentioned in the answer and reply herein.'' Without any responsive pleading having been filed by the County, the parties proceeded to take their proof by deposition, after which, the action was submitted and a judgment entered dismissing the petition. From that judgment, this appeal is prosecuted, primarily on the ground that having failed to deny or question the sufficiency of the allegations of the reply, the County confessed the truth of the statements therein contained which entitled appellants to a reformation of the deed and the damages claimed.

One of the questions raised on this appeal is whether the plaintiff could seek by reply to reform a deed not referred to in the petition but pleaded in bar of the action. Another is whether in any event a reformation could have been decreed without making the Highway Department a defendant. Ordinarily, both of these questions would have to be answered in the negative, since judgment may not be rendered on a cause of action asserted in a reply (Civil Code of Practice, Section 101; McCormack v. Clouse et al., 266 Ky. 450, 98 S. W. (2d) 892), and almost invariably the grantee of a deed is the party whose rights would be affected by its reformation. But the first of these objections was probably waived by appellee's failure to demur to, or otherwise question the propriety of the reply, and the second objection is perhaps answered by the fact that by the provisions of the Statutes (Section 4356t-7) the County was requirerd to pay for the right of way, although it was conveyed to the Commonwealth. We may also ignore the failure of the County to traverse the allegations of the reply, since it is well settled that in equity actions where the parties try the case as if the issues had been properly joined, this Court will do likewise and not treat as confessed the allegations controverted by the proof but not formally traversed by the pleadings. Buchanan v. Sledge, 272 Ky. 15, 113 S. W. (2d) 859. The Chancellor did not write an opinion, and, accordingly, we are uninformed as to whether he declined to reform the deed because of the failure of the reply to allege fraud or mutual mistake,

or whether he deemed the proof insufficient to support such allegations had they been made. Assuming the latter, we could not say that his decision was erroneous. While the proof showed that the appellants executed the deed in question under the belief that the right-of-way would not come within certain distances of fixed objects upon their property, and would not damage their remaining lands, and that they stated to the representatives of the County that they would expect compensation in the event the road was otherwise constructed, the proof does not sustain appellants' theory that a fraud was perpetrated upon them, or their claim that the representatives of the County agreed that appellants would be compensated in the event the road turned out otherwise, or the allegation that there was an agreement that the deed would not be accepted by the County, or recorded, until it was ascertained definitely that the road would be constructed in the manner contemplated. The appellants had previously agreed to convey a right of way over their property without charge and stakes had been driven which indicated to the representatives of the County and to the appellants that the highway, when constructed, would not come nearer to the objects referred to than appellants were willing that it should come. When the County's agents called upon appellants with the prepared deed, neither they nor the appellants had exact information on the subject. The stakes were pointed out and the distances and courses which they seemed to indicate, discussed; and while the County's representatives admitted that appellants made the statements referred to respecting their expectations of compensation in the event the highway damaged them in the particulars referred to, they denied that they made any promises or agreements on the subject. There was no proof that the highway was built otherwise than on the right of way described in the deed, or that any land not embraced in the description was appropriated; and if the Chancellor had decreed the reformation of the deed so as to embrace therein the undertakings and promises of compensation which appellants claim were agreed upon, we would still be confronted with the fact that the agreements would have been unenforcable. This is so because of the provisions of Section 4356t-7, Kentucky Statutes, which is in part as follows:

"They [The Commission] may institute such suit or proceeding in the name of the Commonwealth,

and the county attorney shall represent it. They shall have the power to agree with any landowner as to the value of the right of way and if the agreement reached is approved by the county attorney the fiscal court shall enter an order directing the payment of the amount agreed upon to the landowner, and a record of said agreement shall be spread upon the records of the county court. Any landowner may donate a right of way across his land for any road herein designated and shall execute a deed to the state highway commission for the use and benefit of the State of Kentucky for such right of way.''

Construing this Statute in the case of Postlethweighte et al. v. Towery, 258 Ky. 468, 80 S. W. (2d) 541, 542, in which the landowner had sued the members of the Fiscal Court and former County Attorney and Judge to recover the cash consideration promised him for a right-of-way conveyed to the State Highway Commission, we said:

''Inasmuch as the county must pay for the land and damages, the power to bind the county under the agreement is conditioned upon the approval of the county attorney. He looks after the interests of the county. The statute places upon him the additional duty of also representing the commission in condemnation proceedings if they should follow, so in the trial all concerned will have legal representation. But no authority is given the county attorney to bind his county to pay whatever he might agree with the owner he should receive. Adams' Heirs v. McCoy, 212 Ky. 731, 279 S. W. 1103. To construe the statute otherwise would be to nullify the express authority of the highway commission to make the contract and be in conflict with the uniform and well-founded interpretation of every other act relating to fiscal courts and other municipal bodies to the effect that they can function and contract only as such units and speak by their records, and that neither such bodies nor the municipalities are bound by any promise or commitment of the county attorney or other individual or group of persons.''

In the case of Bates' Adm'r et al. v. Menifee County, 273 Ky. 417, 116 S. W. (2d) 973, 975, in which suit was brought by the landowner to recover damages for the violation of the provisions of a deed which he had

executed to the State Highway Commission, this Court held that the failure of the petition to disclose that the Commission took part in the negotiations, and that the quoted provisions of Section 4356t-7, Kentucky Statutes, had been complied with, rendered the petition fatally defective. Said the Court:

"Our opinions cited in the notes to the section of the statute referred to (Section 4356t-7) clearly point out and hold that unless the directions set forth in the statute to be followed in the acquisition of rights of way by deed are followed the county does not become obligated to comply therewith, and that interpretation of the statute is particularly emphasized in the two cases of Holbrook v. Letcher County, 223 Ky. 597, 4 S. W. (2d) 382, and Postlethweighte v. Towery, 258 Ky. 468, 80 S. W. (2d) 541, 542. It might be insisted that such an interpretation of the statute is an extremely technical one and that its terms should not be so mandatorily construed. But that insistence fails to duly appreciate the consequences of what might follow if the statutory directions were not strictly observed. In the first place, those representing the Highway Commission in such negotiations are ordinarily far better experienced and qualified to guard and protect the interests of the parties than are, at least, a great majority of county attorneys and, perhaps, also more so than the members of fiscal courts. Nevertheless the statute does not invest the State Highway Commission alone with authority to enter into final contracts for the acquisition of rights of way that would be binding on the county, and it was, therefore, provided that the approval of such acquisition by the county attorney should be obtained, and lastly, that 'A record of said agreement shall be spread upon the records of the county court,' after which the fiscal court 'shall enter an order directing the payment of the amount agreed upon to the landowner.' In such co-operating negotiations the intelligence and experience of the functionaries of the Highway Commission, the county attorney, as well as of the members of the fiscal court, are brought into exercise so as (as we infer) to protect not only the county, but the landowner as well."

Appellants knew that they were executing a deed

for a right-of-way over their land for the construction of a highway for no other consideration than the benefits which they expected would accrue to their remaining properties. As before stated, the highway was actually constructed on the strip of land described in the deed, at least the proof does show to the contrary, and to have reformed the deed so as to incorporate therein the agreements for compensation which appellants claimed it was understood they were to receive in the event the highway deviated from the course which the parties thought was indicated by the stakes, would not have aided them, since, under the authorities cited, the agreements would have been unenforceable. It follows that in the absence of proof showing that the appellants through fraud perpetrated upon them, or mutual mistake of the parties, had executed the deed under the belief that it was an entirely different type of document, the Chancellor properly dismissed the petition.

In view of appelants' belief that they would be entitled to compensation if the highway deviated from what they thought was its indicated course so as to damage them, the principles which we have applied in upholding the decision of the chancellor may appear to be harsh, but considerations of public policy render their application inescapable. Under the Statute the County may accept deeds to the Highway Commission when the right-of-way is donated. If conditions are to be attached which might result in the County having to pay out money, the authorities authorized to act for the County might prefer to negotiate for different terms or another right-of-way. So, when a consideration of whatever nature is to be paid, conditionally or otherwise, the agreement must be approved by the County Attorney and the Fiscal Court and a statement thereof spread upon the official records. One cannot be compelled to give his land for a right-of-way; but if he elects to give it he cannot impose conditions, which might result in injury to the taxpayers, without the acquiescence of their authorized representatives expressed and evidenced in the manner required by statute.

Judgment affirmed.

Whole Court sitting.